**Stanley BRYANT, Appellant–Petitioner,**

**v.**

**STATE of Indiana, Appellee–Respondent.**

**No. 49A05–0211–PC–541.**

Court of Appeals of Indiana.

Sept. 4, 2003.

---

Stanley Bryant, Pendleton, IN, Appellant Pro Se.

Steve Carter, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant Petitioner Stanley Bryant ("Bryant") appeals the denial of his petition for post-conviction relief challenging his convictions of Robbery[1] and Carrying a Handgun Without a License.[2] We affirm.

### Issues

Bryant raises two issues: whether he was denied the effective assistance of trial counsel and whether he was denied the effective assistance of appellate counsel.

### Facts and Procedural History

This Court recited the pertinent facts on direct appeal as follows:

In September of 1993, Steve Shanklin placed an advertisement in a magazine to sell a 1988 Mercedes Benz. On September 9, 1993, Shanklin received several messages from Bryant, using a different name, on his answering machine regarding the advertisement. However, Bryant did not leave a telephone number where he could be reached.

After Shanklin returned home that day, Bryant contacted him again and requested directions to his house so that he could look at the Mercedes. Approximately one hour later, Bryant appeared at Shanklin's house to inspect the car and handed Shanklin a business card with the name and address of Lee's Barber Shop on it. Shanklin and Bryant talked about the car and took it for a test drive.

After Shanklin expressed concern about Bryant's driving, Bryant pulled to the side of the road and told Shanklin that he could drive. Shanklin exited the passenger's side of the car, but Bryant did not move from the driver's seat. As Shanklin approached the front of the car, Bryant pointed a gun at him and told him to run. Shanklin ran to a nearby home while Bryant fled in the car.

Bryant was later charged with robbery, carrying a handgun without a license, and being an habitual offender. On March 1, 1995, the trial court commenced a jury trial. The jury found Bryant guilty on the robbery and carrying a handgun without a license charges, and the trial court later sentenced him to thirty-five years and one year respectively.

*Bryant v. State,* No. 49A02–9508–CR–450, 674 N.E.2d 1046, slip op. at 2–3 (Ind.Ct. App. Dec.13, 1996). On direct appeal, Bryant raised three issues: (1) whether the trial court erroneously excluded evidence relating to Albert Pejoe Johnson ("Johnson"); (2) whether the trial court erroneously admitted evidence of prior misconduct; and (3) whether the trial court erroneously denied Bryant's motion to continue for the purpose of investigating lost evidence. This Court affirmed Bryant's convictions.

On January 24, 2001, Bryant filed a petition for post-conviction relief, alleging ineffective assistance of trial and appellate counsel regarding excluded evidence relating to Johnson. The post-conviction court held evidentiary hearings on July 17, 2001 and on November 6, 2001. On January 31, 2002, the post-conviction court denied Bryant's petition. On October 2, 2002,

---

1. IND.CODE § 35–42–5–1.

2. IND.CODE § 35–47–2–1.

Bryant moved for relief from judgment. The post-conviction court denied the motion, re-stated its Findings of Fact and Conclusions of Law and denied Bryant post-conviction relief. He now appeals the denial of post-conviction relief.

## Discussion and Decision

### I. Standard of Review

■ At the hearing on his petition for post-conviction relief, Bryant had the burden of establishing his grounds for relief by a preponderance of the evidence. Ind. Post Conviction Rule 1(5). He now appeals from a negative judgment, and to the extent his appeal turns on factual issues, Bryant must convince this Court that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court. *Harrison v. State*, 707 N.E.2d 767, 773 (Ind.1999). The decision will be disturbed only if the evidence is without conflict and leads only to a conclusion contrary to the result of the post-conviction court. *Id.* at 774.

The purpose of a petition for post-conviction relief is to raise issues unknown or unavailable to a defendant at the time of the original trial and appeal. *Lockhart v. State*, 632 N.E.2d 374, 375 (Ind.Ct.App. 1994). A post-conviction petition is not a substitute for an appeal. *Weatherford v. State*, 619 N.E.2d 915, 916 (Ind.1993). Moreover, post-conviction proceedings do not afford a petitioner a "super-appeal." *Benefiel v. State*, 716 N.E.2d 906, 911 (Ind. 1999). Our post-conviction rules contemplate a narrow remedy for subsequent collateral challenges to convictions. *Williams v. State*, 706 N.E.2d 149, 153 (Ind.1999). With the exception of ineffective assistance of counsel, if an issue was known and available but not raised on appeal, it is waived. *Benefiel*, 716 N.E.2d at 911. If an issue was raised on direct appeal, but decided adversely to the petitioner, it is *res judicata*. *Trueblood v. State*, 715 N.E.2d 1242, 1248 (Ind.1999). Generally, complaints that something went awry at trial are cognizable only when they show deprivation of the right to effective counsel or issues demonstrably unavailable at the time of trial or direct appeal. *Sanders v. State*, 765 N.E.2d 591, 592 (Ind.2002).

### II. Effectiveness of Trial Counsel

■ The issue of ineffective assistance of trial counsel was not raised on direct appeal, and is thus not foreclosed in post-conviction proceedings. *Rondon v. State*, 711 N.E.2d 506, 517 (Ind.1999).

The theory of Bryant's defense was mistaken identity. According to Bryant, Johnson was very similar in appearance to Bryant and was the actual perpetrator of the crimes with which Bryant was charged. Prior to trial, counsel filed a "Motion to Produce Prisoner [Johnson] for Viewing by Jury," which was denied by the trial court after a hearing. At the hearing, counsel produced a booking information photograph of Johnson, which was admitted as a hearing exhibit. During Bryant's trial testimony, counsel requested a hearing outside the presence of the jury during which he made an offer of proof and elicited testimony from Bryant that Johnson had confessed to taking a Mercedes on September 9, 1993. Counsel also elicited testimony that Johnson owned a 1987 gray Cadillac, apparently in response to Shanklin's testimony that the robber drove a "gray four-door, bigger car, older, '76 to '80, Oldsmobile, some sort maybe." (Tr. 364.) Counsel made an additional offer of proof regarding a cancelled line-up.[3]

---

**3.** The Prosecutor responded with an offer of proof that the cancelled line-up pertained to another carjacking case, and would not have included Johnson.

In post-conviction proceedings, Bryant testified and claimed that his trial counsel was ineffective because counsel failed to: (1) deliver a photograph of Johnson to the investigating detective;[4] (2) submit into evidence a Crime Stoppers article in the Indianapolis News indicating that Johnson was sought for a vehicle robbery and shooting; and (3) call Marion County Sheriff's Chaplain J.D. Moore as a witness. Allegedly, Chaplain Moore was present, but could not hear Johnson's portion of the conversation, when Bryant placed a telephone call to his home and spoke with Johnson, who allegedly admitted stealing a vehicle.[5] Bryant submitted a photocopy of pages of a Crime Stopper article in the Indianapolis News. The article contained a photograph of Johnson, with a notation of "Charges: Robbery, carrying a handgun, habitual offender." (P.C.R. Exhibit F.)

## A. Standard of Review—Effectiveness of Trial Counsel

To prevail on a claim of ineffective assistance of counsel, Bryant must show that his counsel's performance fell below an objective standard of reasonableness as determined by prevailing professional norms. *Rondon,* 711 N.E.2d at 517. If this is established, he must also show prejudice resulting therefrom. *Id.* at 518. Prejudice has been defined as whether "counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Id.* (citing *Lockhart v. Fretwell,* 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993)).

In most circumstances, deficient performance of counsel will only be prejudicial when there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Lambert v. State,* 743 N.E.2d 719, 730 (Ind.2001), *cert. denied,* 534 U.S. 1136, 122 S.Ct. 1082, 151 L.Ed.2d 982 (2002).

## B. Analysis

On direct appeal, this Court addressed the issue of whether the trial court erroneously excluded evidence relating to Johnson, and stated in pertinent part:

> [W]e restrict our review to the two rulings Bryant specifically emphasizes and for which he provides an argument: the denial of his motion to produce Johnson for the purpose of enabling the jury to compare the physical similarities between Johnson and Bryant, and the restriction of his testimony concerning Johnson for both substantive and impeachment purposes. All other challenges are waived because Bryant has failed to provide a cogent argument and authority as required by the appellate rules....
>
> First, Bryant challenges the trial court's denial of his motion to produce Johnson. The trial court denied the motion on the grounds that the physical appearance of Johnson was irrelevant to the ultimate question of whether Bryant committed the crime in question. On appeal, Bryant maintains that Johnson's appearance was relevant to the question of identity and that Johnson's presence would have aided Bryant's defense that Johnson committed the crime.
>
> A defendant may, of course, establish his innocence by showing that some oth-

---

4. Bryant has abandoned this contention on appeal. However, we observe that this contention did not concern counsel's trial performance.

5. Bryant's trial counsel, Stephen Laudig, did not testify at the post-conviction hearing, but submitted an Affidavit providing in pertinent part: "I am unable to remember Mr. Bryant, his case, or my representation of him. I am unable to recall anything regarding the preparation for or trial of Mr. Stanley Bryant's case." (P.C.R. Exhibit B.)

er person or persons committed the crime charged.... However, the mere possibility that some third person committed the crime is not enough. The standard for introducing evidence showing that a third party committed the charged crime is that "such evidence must do more than cast suspicion or raise conjectural inference that a third party committed the crime; it must directly connect the third party to the crime charged." ... In other words, evidence tending to incriminate another must be competent and confined to substantive facts which create more than a mere suspicion that another person committed the particular offense in question....

Here, by requesting the production of Johnson, Bryant intended for the jury to compare his physical appearance to Johnson's appearance so that it could decide whether Shanklin could have erred when he identified Bryant as the perpetrator rather than Johnson. However, Bryant failed to present any evidence linking Johnson to the crime charged other than his own testimony during the offer to prove that Johnson had admitted to him that he had committed the crime. This testimony was, at most, hearsay evidence designed to cast a mere suspicion over Bryant's involvement in the robbery.... Consequently, *Bryant failed to present sufficient evidence directly connecting Johnson to the crime charged such that the trial court was required to grant his motion to produce Johnson.* ... Unlike the newspaper article Kucki presented, however, the only evidence of any prior criminal activity by Johnson was Bryant's own testimony that Johnson told him he had stolen the car. *Bryant failed to present any independent evidence lending credence to the claim that Johnson committed the crime.*

*Bryant,* slip op. at 4–6 (internal citations omitted) (emphasis added).

██ Recognizing that this Court found a deficiency of evidence implicating Johnson, Bryant now contends that his trial counsel should have submitted into evidence a Crime Stoppers newspaper article, Johnson's Bureau of Motor Vehicles ("BMV") registration and a gallery photograph of Johnson. He further claims that these items would have constituted sufficient evidence directly connecting Johnson to the crimes at issue, such that this Court would have reversed his convictions, to permit the introduction of relevant identification evidence on retrial. *See Kucki v. State,* 483 N.E.2d 788 (Ind.Ct.App.1985) (reversing conviction after trial court excluded evidence relating to a claim of mistaken identity in the form of a newspaper article with a picture of a man resembling the defendant whom police were investigating in a series of burglaries and thefts in the area).

Trial counsel pursued a defense strategy of mistaken identity. To this end, he moved to produce Johnson for viewing by the jury, presented the trial court with a photograph of Johnson, and obtained a hearing outside the presence of the jury during which he was permitted to make an offer of proof. Counsel elicited testimony that Johnson was similar to Bryant, owned a large gray vehicle, and confessed to vehicle theft on September 9, 1993. His efforts, although they did not ultimately achieve the result desired by Bryant, were more than adequate to support the defense of mistaken identity. *See Badelle v. State,* 754 N.E.2d 510, 539 (Ind.Ct.App.2001), *trans. denied.* The decision not to submit a different photograph or a registration document was within the wide range of reasonable professional assistance. Too, a

decision not to call Chaplain Moore as a witness was not unreasonable, given that Bryant testified that Chaplain Moore could not hear the alleged telephonic confession of Johnson.

■ Moreover, assuming that Johnson was similar in appearance to Bryant and was wanted for a similar crime, we are not persuaded that the result of the proceeding here was rendered unreliable by the omission of additional documentary evidence allegedly implicating Johnson. Bryant testified that Johnson admitted to the theft of a Mercedes "that he found running." (Tr. 872.) Specifically, Bryant testified as follows:

> Counsel: All right. What did you tell him [Johnson] about the case involving the September 9th, 1993 robbery?
>
> Bryant: I told him that they got me down here locked up on a robbery case about a Mercedes that he said that he found running.
>
> Counsel: I don't understand that answer.
>
> Bryant: He said he seen a Mercedes running and he got the car.
>
> Counsel: Did he tell you that he robbed the car?
>
> Bryant: Not at the time but when I was in jail he told me he robbed for the car.
>
> Counsel: And that's the Mercedes that was stolen on September 9th?
>
> Bryant: Yes.

(Tr. 872.) The robbery with which Bryant was charged did not involve a vehicle left running, which was then taken. Rather, Shanklin testified that the person who robbed him of his vehicle made arrange-

ments to meet with him in an apartment complex parking lot, and then spoke with him for about fifteen minutes before driving the vehicle. During the test drive, the robber stopped, pulled out a gun, and told Shanklin to "take off running." (Tr. 367.) Shanklin estimated that he was with that man for twenty-five minutes. Shanklin identified Bryant, both in and out of court, as his robber.[6]

As such, had trial counsel submitted the Crime Stoppers article, an additional photograph of Johnson and a BMV record, the documents would not directly connect Johnson to the theft of Shanklin's vehicle, nor is there a reasonable probability that the result of the proceeding would be different.

Moreover, we are not persuaded by Bryant's argument that the presentation of additional documents by trial counsel would have resulted in reversal on appeal. Although this Court, in addressing the issue of the exclusion of materials related to Johnson on direct appeal, recognized a deficiency of evidence directly linking Johnson to the Shanklin robbery, the materials that Bryant describes do not comprise such evidence, and so counsel was not ineffective in failing to produce them.

Accordingly, Bryant failed to establish his entitlement to post-conviction relief on the basis of ineffective assistance of trial counsel.

### III. Effectiveness of Appellate Counsel

Next, Bryant argues that his appellate counsel was ineffective for failing to raise a claim that Johnson's confession to Bryant should have been admitted into evidence at

---

**6.** At trial, the jury was permitted to propound questions to Shanklin. One question, read by the trial court, was as follows: "Mr. Shanklin, how can you be positive of your identification that you refer to in State's Exhibit One of that number one person on State's Exhibit One?"

(Tr. 388.) Shanklin responded: "I'm positive it was him. Somebody pulls a gun at you three feet away from you it's a vivid picture that stays in your mind for a long long time." (Tr. 388.)

trial as an admission against interest under Indiana Evidence Rule 804.

### A. Standard of Review—Effectiveness of Appellate Counsel

Ineffective assistance of appellate counsel requires the petitioner to overcome the double presumption of attorney competence at both trial and appellate levels. *Woods v. State,* 701 N.E.2d 1208, 1221 (Ind.1998). Reviewing courts must be particularly deferential to counsel's strategic decision to exclude certain issues on appeal in favor of others. *Id.* Accordingly, appellate counsel is not ineffective for failing to argue all nonfrivolous claims. *Id.* Moreover, appellate counsel is not required to look outside the record to develop claims. *Id.*

### B. Analysis

 "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered into evidence to prove the truth of the matter asserted. Ind. Evidence Rule 801(c). Johnson's confession to Bryant is hearsay unless it falls within a recognized hearsay exception.

In *Thomas v. State,* 580 N.E.2d 224 (Ind.1991), the Indiana Supreme Court adopted Federal Rule of Evidence 804(b)(3) as the law in Indiana. As adopted, the Rule provided:

> A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

In adopting this rule, the Court observed that the rule served to assure a defendant his due process right to present evidence in his favor while protecting the trial court's ability to exclude evidence that is irrelevant or insufficiently trustworthy. *Thomas,* 580 N.E.2d at 226.

 In 1994, Indiana Evidence Rule 804(b)(3) was promulgated, and provides in pertinent part:

> (b) Hearsay Exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness.
>
> (3) A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.

The Indiana rule is not identical to its federal counterpart, in that Indiana has removed the requirement of corroborative evidence. *Jervis v. State,* 679 N.E.2d 875, 879 (Ind.1997). Nevertheless, our supreme court has observed:

> [F]or the same reasons courts in this state have historically viewed such declarations with suspicion, trial courts should be alert to evaluate the overall reliability of the proffered statement. Reliability is, after all, the ultimate justification for admission of statements against interest.

*Id.* We find, as did a separate panel of this Court in *Swanigan v. State,* 720 N.E.2d 1257 (Ind.Ct.App.1999), the *Jervis* dicta to be persuasive guidance, and conclude that the requirement of reliability is embodied

within Indiana Evidence Rule 804(b)(3). As such, appellate counsel was not obliged to argue the erroneous exclusion of evidence under the rule unless it appeared from the record that the evidence was reliable.

Here, Johnson allegedly confessed to taking a Mercedes he found running. This account did not match the circumstances of the robbery with which Bryant was charged. Thus, its relevance is marginal at best. Johnson's statement to Bryant was uncorroborated. Moreover, the confession was not made to a disinterested witness, but to Bryant, who was presumably highly motivated to interpret the statement as exculpatory to him. As such, appellate counsel could have concluded, within the exercise of reasonable professional judgment, that the exclusion of Johnson's statement from evidence did not present a strong issue for appeal.

Accordingly, Bryant was not denied the effective assistance of appellate counsel because counsel did not raise an issue premised on Indiana Evidence Rule 804(b)(3).

### Conclusion

Bryant has failed to demonstrate that trial or appellate counsel's performance was deficient or that he suffered resulting prejudice. Accordingly, the post-conviction court did not err in rejecting Bryant's ineffective assistance claims.

Affirmed.

KIRSCH, J., and VAIDIK, J., concur.