Kenya M. SWANIGAN, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 82A01–9904–CR–133.

Court of Appeals of Indiana.

Dec. 27, 1999.

Rehearing Denied Feb. 22, 2000.

Timothy R. Dodd, Evansville, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, J.T. Whitehead, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

**OPINION**

SHARPNACK, Chief Judge

Kenya Swanigan appeals her convictions for two counts of robbery, both class B felonies.[1] Swanigan raises one issue for our review, which we restate as whether the trial court erred in refusing to admit into evidence three letters under the statement against interest exception to the hearsay rule. We affirm.

The facts most favorable to the conviction follow. In the early morning hours of August 8, 1998, Tiffany Moorman and Toshieka Douglas, both of Owensboro, Kentucky, were on their way to the C.K. Newsome Center in Evansville, Indiana. Unsure of where they were, they stopped the vehicle and asked Swanigan and Antwan Henley, a couple walking across the street, for directions. Swanigan and Henley stated that they were also going to the

---

1. Ind.Code § 35–42–5–1.

C.K. Newsome Center also and that they would show them the way if Moorman and Douglas would let them in the vehicle. After being granted permission, Swanigan and Henley got into the back seat of the vehicle. Moorman looked into her rear view mirror almost immediately and saw that Henley was pointing a gun at her. While ordering Moorman to drive to various places, Swanigan and Henley demanded money from Moorman and Douglas, searched their purses, and took their jewelry. Then, Henley ordered Moorman and Douglas to strip and get into the trunk of the vehicle. After closing the lid on the trunk, Henley and Swanigan got back into the vehicle and Henley drove off. Some moments later, Henley stopped the vehicle, and he and Swanigan fled on foot in different directions. Shortly thereafter, the police apprehended Swanigan and Henley and escorted them back to the vehicle where the two victims were discovered in the trunk.

Swanigan was charged with two counts of kidnapping,[2] two counts of robbery,[3] and carjacking.[4] Following a jury trial, Swanigan was acquitted of the carjacking and kidnapping charges. However, she was found guilty of both robbery counts and was sentenced to twelve and a half years imprisonment for each count, to be served consecutively.

■ The sole issue for our review is whether the trial court erred in refusing to admit into evidence three letters under the statement against interest exception to the hearsay rule. *See* Ind. Evidence Rule 804(b)(3). We review claims of erroneous evidentiary rulings for an abuse of discretion and only reverse where the decision is clearly against the logic and effect of the facts and circumstances. *Ford v. State,* 704 N.E.2d 457, 459 (Ind.1998), *reh'g denied*

In the instant case, Henley was charged with the identical offenses as Swanigan for his part in the crime. While incarcerated, but before his trial where he was convicted of said offenses, Henley wrote three letters which were addressed to either Swanigan or her attorney. These letters included such statements as, "allow me to apologize to you for committing that robbery while you was [sic] with me. I know I should have let you go when you ask [sic] me.... Now I have you incarcerated on charges you truly didn't have anything to do with," that Swanigan "stated serial [sic] times she didn't want anything to do with that robbry [sic]" and that Swanigan was "afraid and thought [he] would shoot [her]." In addition to statements such as these that were, to a greater or lesser extent, incriminatory towards Henley and exculpatory towards Swanigan, the letters also noted his mental illness, for which he receives a monthly disability check, and his addiction to drugs and alcohol. Moreover, one of the letters contained several inconsistencies regarding his culpability. For example, Henley wrote about feeling bad about his actions, that he was guilty of the crime, and that he had turned his life over to Jesus Christ. However, he also wrote that he was "never found anywhere at the actual crime spot" and that he "was not caught in the act by the police."

At Swanigan's trial, Henley was called as a witness. However, Henley was in the process of appealing his convictions for the same events for which Swanigan was now on trial, and therefore, any testimony that he gave could have been used against him in a subsequent proceeding if the appeal of his conviction was successful. Accordingly, Henley asserted his Fifth Amendment right against self-incrimination and refused to testify. The trial court then declared Henley unavailable as a witness and Swanigan sought to have the three letters in question introduced into evidence under the statement against interest exception to the hearsay rule. *See* Evid. R. 804(b)(3).

---

**2.** Ind.Code § 35–42–3–2.

**3.** I.C. § 35–42–5–1.

**4.** Ind.Code § 35–42–5–2.

The trial court ruled that the letters were not within the exception to the hearsay rule described under Evidence Rule 804(b)(3). In making its ruling, the trial court stated:

> "[R]eliability is the ultimate test of admission. Ah, one, one ah, aspect of whether the statement is reliable is, is it a clear and unequivocal statement of the declarant's guilt ah, the second and in this case, given the fact that we have a recantation of, of the prior statements and some equivocation ah, of his guilt in the Exhibits themselves, the Court does not find it a clear and unequivocal statement of declarant's guilt ah, the Court, the case is also ahm, talk about motive for the statement and whether there's a relationship between the declarant and the party that's pro ... ah, proffering the statement, there is of course a long term relationship here.... The Court did have an opportunity to observe Mr. Henley and Mr. Henley's demeanor yesterday on the witness stand. Court does not find that his credibility is high ah, he's not the kind of person that I think most people would describe as reasonable or ah, trustworthy...."

Record, pp. 667–668.

Hearsay is an out of court statement offered to prove the truth of the matter asserted and generally is not admissible into evidence. Ind. Evidence Rule 802. However, hearsay testimony is nevertheless admissible under the statement against interest exception if the declarant is unavailable as a witness and the statement, at the time it was made, was "so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability ... that a reasonable person in the declarant's position would not have made the statement unless believing it to be true." Ind. Evidence Rule 804(b)(3).

On appeal, Swanigan argues that Rule 804(b)(3) only requires proof that the declarant is unavailable and that the statement sought to be admitted is against the declarant's penal interest. Since Henley was indisputably unavailable, and the State concedes the issue of penal interest, Swanigan argues that the letters at issue met the rule's requirements and that the trial court erred in refusing to admit them into evidence. Specifically, Swanigan takes issue with the fact that the trial court found that the letters did not meet the criteria of Rule 804(b)(3) by "relying primarily on the inconsistencies within the statements themselves, the motive of the declarant Henley, and the Court's own personal belief as to his credibility." Appellant's Brief, p. 9. In support, Swanigan cites to the fact that Indiana Evidence Rule 804(b)(3), unlike its federal counterpart, does not impose the requirement that the statement is inadmissible "unless corroborating circumstances clearly indicate the trustworthiness of the statement." Fed. Evidence Rule 804(b)(3). Accordingly, Swanigan argues that the absence of this requirement from the Indiana rule means that "no corroboration is necessary for the admission into evidence of the out of court declaration of an unavailable Declarant that is incriminatory, even when offered as exculpatory evidence by a Co–Defendant." Appellant's Brief, p. 14.

Our supreme court initially adopted the federal version of Rule 804(b)(3), including the language regarding corroborating circumstances indicating trustworthiness, in *Thomas v. State*, 580 N.E.2d 224, 227 (Ind. 1991). The *Thomas* court noted that "[t]his rule serves to assure a defendant his due process right to present evidence in his favor while protecting the trial court's ability to exclude evidence that is irrelevant or insufficiently trustworthy." *Id.* at 226. However, the Indiana Rules of Evidence, which were adopted in 1994, omitted the language regarding corroborating circumstances indicating trustworthiness from its version of Rule 804(b)(3). Although this change "appear[s] to have eased the reliability requirement for admissions against penal interest," it is not "clear what, if any, indicia of trustworthi-

ness is required for admission of a confession as a declaration against penal interest under the Indiana rule." *Davis v. State*, 635 N.E.2d 1117, 1121 (Ind.Ct.App.1994). *See also Jervis v. State*, 679 N.E.2d 875, 879 n. 5 (Ind.1997) (noting that the lack of a requirement in the Indiana rule regarding corroborating circumstances which indicate trustworthiness "renders unclear what indicia of trustworthiness, if any, must be found for the statement to be admitted").

In *Jervis*, our supreme court noted the difference in the federal and the Indiana rule regarding statements against interest, namely the lack of the requirement of corroborative evidence in Indiana. *Jervis*, 679 N.E.2d at 879. Immediately thereafter, the court stated, "for the same reasons courts in this state have historically viewed such declarations with suspicion, trial courts should be alert to evaluate the overall reliability of the proffered statement. Reliability is, after all, the ultimate justification for admission of statements against interest." *Id.* While we realize that the commentary in *Jervis* is dicta because *Jervis* was decided on grounds other than the existence or lack of corroborating circumstances, we nonetheless view *Jervis* as persuasive guidance in our resolution of this issue.

"Exceptions to the hearsay rule exist, because the manner in which certain out-of-court statements are made virtually guarantee their reliability." *Arndt v. State*, 642 N.E.2d 224, 227 (Ind.1994). While "[t]he law has long recognized the credibility inherent in a statement which at the time of its making so far tended to subject the declarant to criminal liability that a reasonable person in the declarant's position would not have made the statement unless he believed it to be true," such cannot necessarily be said of the letters in the instant case. *Wilson v. State*, 677 N.E.2d 586, 589 (Ind.Ct.App.1997). All of the letters written by Henley contain numerous references to his drug and alcohol addiction, two contain references to his

mental illness, and one contains directly contradictory information regarding his culpability in the matter. This information, along with the trial court's observance of Henley himself, could have reasonably led the trial court to believe that the letters sought to be admitted were themselves not reliable, the cornerstone of admissibility. *See Jervis*, 679 N.E.2d at 879; *Arndt*, 642 N.E.2d at 227. Accordingly, we hold that the trial court did not abuse its discretion in refusing to admit the letters written by Henley due to their overall lack of reliability. *See id.*

We emphasize that we sustain the trial court's ruling on the basis of the reliability of the letters themselves alone, and leave for another day the question of the propriety of the trial court considering evidence of "corroborating circumstances" of trustworthiness, such as Henley's motive in writing the letters. Corroborating evidence is defined as "[e]vidence *supplementary* to that already given and tending to strengthen or confirm it [or] *[a]dditional* evidence of a different character to the same point." BLACK'S LAW DICTIONARY 344 (1990 ed.) (emphasis added). Letters deemed unreliable due to the information contained within them, indicative of the mental status of the author, are not the same thing as letters deemed inadmissible due to a lack of corroborating evidence of trustworthiness.

■■■ However, assuming arguendo that the trial court did err in excluding the letters from evidence, such error was harmless. The erroneous exclusion of evidence is deemed harmless when its probable impact on the jury, in light of all the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties. *Fleener v. State*, 656 N.E.2d 1140, 1142 (Ind.1995).

Here, there was substantial independent evidence supporting Swanigan's conviction for robbery and disproving her claim that she was not a willing participant in the events of the evening in question. First, both victims identified Swanigan as one of

the two assailants who robbed them. In fact, it was Swanigan, not Henley, who coaxed the reluctant Moorman into allowing them to get into the car in the first place. Furthermore, evidence was presented that Swanigan, after searching through the victims' purses, threatened them by telling them that she had their identification cards, knew where they lived, and that they had better cooperate if they wanted to live or to see their children live. Both victims testified that Swanigan, as well as Henley, took jewelry from them; Swanigan actually physically removed a necklace from one of the victim's necks. Moreover, the victims testified that at no time did Henley ever threaten Swanigan or aim a gun at her, but instead helped and assisted Henley in the commission of the crime. Therefore, in light of the aforementioned evidence of Swanigan's guilt, it is unlikely that the three letters written by a drug and alcohol addicted, mentally ill man with whom Swanigan had a long-time relationship would have, if admitted, resulted in the jury returning a verdict of "not guilty" of the robbery charges. Accordingly, even if the exclusion of the letters was erroneous, such error did not affect Swanigan's substantial rights given the substantial evidence of her guilt. *See id.* at 1142.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

RILEY, J., and KIRSCH, J. concur.