Donald TROUTNER, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 91A04–1012–CR–796.

Court of Appeals of Indiana.

July 18, 2011.

Transfer Denied Sept. 29, 2011.

---

Steven Knecht, Vonderheide & Knecht, P.C., Lafayette, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Donald Troutner appeals his convictions for robbery, as a Class B felony, and battery, as a Class A misdemeanor, following a jury trial. Troutner raises two issues for our review, namely:

1. Whether the same evidence that the State used to support Troutner's conviction for robbery was also used to support his conviction for battery.

2. Whether the trial court abused its discretion when it limited the testimony of Troutner's niece.

We hold that the State presented the same evidence to support both of Troutner's convictions and, therefore, we vacate the lesser conviction for battery. We also hold that the trial court erred when it limited the testimony of Troutner's niece. Nonetheless, because that error was harmless, we affirm Troutner's conviction for robbery.

### FACTS AND PROCEDURAL HISTORY

In the early evening of September 1, 2010, James Philo walked across the street from his residence in Monon to the residence of William and Debra Hubbard, where Philo's son was visiting. Philo's son left soon afterward, but Philo stayed and had drinks with the Hubbards, Troutner, and Krista Hubbard. Krista is the twenty-two-year-old daughter of William and Debra, and Troutner is Debra's brother.

After some time, Philo offered to buy more beer, and Krista drove him and Troutner to a liquor store. They purchased some alcohol and returned to the Hubbards' residence. And when they ran out of beer a second time, Philo again offered to purchase more and Krista drove Philo and Troutner back to the liquor store.

En route, Philo had Krista stop at his residence so he could get some cash. Philo placed $350 in cash in his wallet and the trio returned to the liquor store and purchased some more alcohol. When they returned to the car, Philo sat in the front passenger seat of the two-door car and Troutner sat behind him.

Once back in the car, Troutner asked Krista to drive them "out to the country" to pick up Troutner's girlfriend. Transcript at 88. About three miles outside of Monon, Troutner asked Krista to pull the car over so he could "relieve himself." Appellant's Br. at 6. Krista pulled over, and Philo leaned his seat forward for Troutner to exit. Upon exiting, Troutner immediately began beating his fists against Philo's head and face. Troutner began yelling, "Give me your money," and "Give me your money or I will kill you," while Krista exited the vehicle. Transcript at 89. Philo had his arms over his face to block the blows, but he was knocked onto his side across the front seats. Troutner

606

then reached into Philo's front pants pocket, but Philo told him that there was nothing there and that he kept his money in his wallet. Troutner then removed Philo's wallet from Philo's back pants pocket, and Philo crawled out of the driver's side door of the vehicle. Krista and Troutner drove away with Philo lying in the road.

Philo immediately called 911 and reported the incident, and nearby officers responded promptly. Within minutes, Krista and Troutner had been stopped at a nearby gas station by several officers. Troutner told the officers that they were in town for cigarettes and that the $334 cash on his person had been given to him by his mother. Troutner further stated that the fresh cuts and abrasions to his hands were from his sister's dog, which had bitten him. Officers also observed blood on Troutner's shirt and jeans. Krista denied ever having Philo in her car or having driven on the road where Philo had been abandoned. Officers observed blood on Krista's shirt.

On September 3, the State charged Troutner with robbery, as a Class B felony. The State later added a charge for battery, as a Class C felony. The trial court held Troutner's jury trial on November 16–17. The State called Philo and several of the officers to testify. The State also called Krista as a witness, and she testified that Philo was with them on September 1, that she pulled the car over for Troutner to urinate, and that when she did so she saw Troutner hit Philo. She then got out of the car and helped Philo crawl out through the driver's side door. But she did not recall seeing Troutner take any money from Philo or talking to Troutner about the incident afterward.

On cross examination, Krista testified as follows:

Q. [Wa]s there any conversation going on [in the car] from the point you le[ft] the liquor store to head out to the country?

A. The music was on, Uncle Don [Troutner] and James Philo, they were whispering to theirselves [sic] on the other side of the car by the window. I didn't hear what they were talking about. I didn't even think anything of it.

Q. And Mr. Troutner was in the back seat directly behind from [sic] Mr. Philo, correct?

A. Yes.

Q. It was the passenger's side door/window where they were talking?

A. Yep.

Q. How, if you recall, how loud was your radio set that night?

A. Medium.

Q. Loud enough where you couldn't hear—

A. You could hear each other talking if they had inside voices, but not loud enough where you had to yell.

Q. And you couldn't hear any of their conversation?

A. No.

Transcript at 150.

Once the attorneys had concluded their examination of Krista, a juror proffered the following question to her: "Krista, did you hear the defendant say anything to [Philo] or [Philo] say anything to the defendant during the fight?" *Id.* at 159. Krista said that she did, and the court immediately called a recess. Once the jury had exited the courtroom, the court asked Krista about the contents of those statements. Krista responded that she "heard [Troutner] call James Philo a child molester" while Troutner was punching Philo. *Id.* at 160. Krista also said she heard Troutner say, "You're not going to be able to have my niece [Krista]. You're

a child molester." *Id.* at 161. The State objected to the admission of those statements on the grounds that they were hearsay and "obviously prejudicial." *Id.* The trial court agreed and excluded the testimony.

After the jury had returned, Troutner testified in his own defense. According to Troutner, during the trip into the country, Philo turned to him and started talking about "[s]ex ... [a]nd money ... [and m]y niece." *Id.* at 273. In the course of those statements, Philo handed the $334 to Troutner, and Troutner accepted it. Troutner then asked Krista to pull the car over, and Troutner began hitting Philo and telling him "that he's not buying my niece." *Id.* at 275. Troutner then testified that he called Philo "a molester, a child molester ... because ... Krista's my niece.... To me, she's still a child." *Id.* at 276. Troutner reiterated those points later in his testimony, stating that Philo asked him, "Can he get her," while handing Troutner the money. *Id.* at 293. And Troutner stated that he had accepted the money despite Philo's comments because he was drunk. *Id.* at 298.

Following Troutner's testimony, Troutner's counsel called Krista as a witness. The State objected, and the trial court sustained the objection. Troutner then made an offer of proof, in which Krista stated that, during the altercation, she had heard Troutner call Philo a child molester and had heard Troutner make a comment to Philo "about buying his niece." *Id.* at 321.

Following closing arguments, the jury found Troutner guilty of robbery, as a Class B felony, and battery, as a Class A misdemeanor. The court entered its judgment of convictions and sentences accordingly. This appeal ensued.

## DISCUSSION AND DECISION

### Issue One: Double Jeopardy

 Troutner first contends that the State supported each of his two convictions with the same evidence, in violation of Indiana's Double Jeopardy Clause. *See Richardson v. State*, 717 N.E.2d 32 (Ind. 1999). As our supreme court has explained:

In *Richardson*, we reviewed the history of the Indiana Constitution's Double Jeopardy Clause to ascertain and articulate a single comprehensive rule synthesizing and superseding previous formulations and exceptions. We explained that two offenses are the "same offense" in violation of the Indiana Double Jeopardy Clause if, "with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." [*Richardson*, 717 N.E.2d at 49]. In the present case the defendant claims a violation of the Indiana Double Jeopardy Clause not under the statutory elements test but under the actual evidence test. To show that two challenged offenses constitute the same offense under the actual evidence test, "a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Id.* at 53.

Application of the actual evidence test requires the reviewing court to identify the essential elements of each of the challenged crimes and to evaluate the evidence from the jury's perspective, considering where relevant the jury instructions, argument of counsel, and other factors that may have guided the

jury's determination. *Richardson,* 717 N.E.2d at 54 n. 48; *see, e.g., Burnett v. State,* 736 N.E.2d 259, 262–63 (Ind.2000). The Richardson actual evidence test was carefully and deliberately crafted to provide a general formulation for the resolution of all actual evidence test claims. The language expressing the actual evidence test explicitly requires evaluation of whether the evidentiary facts used to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense. The test is not merely whether the evidentiary facts used to establish one of the essential elements of one offense may also have been used to establish one of the essential elements of a second challenged offense. In other words, under the *Richardson* actual evidence test, the Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense. Application of this principle has been articulated in different ways. *Compare Richardson,* 717 N.E.2d at 54 ("the defendant has demonstrated a reasonable possibility that the evidentiary facts used by the jury to establish the essential elements of robbery were also used to establish the essential elements of the class A misdemeanor battery"), *with Chapman v. State,* 719 N.E.2d 1232, 1234 (Ind.1999) ("the same evidence used by the jury to establish the essential elements of murder was also included among the evidence establishing the essential elements of robbery as a Class A felony").
*Spivey v. State,* 761 N.E.2d 831, 832–33 (Ind.2002) (footnote omitted). "To establish that two offenses are the same offense under the actual evidence test, the possibility must be reasonable, not speculative

or remote." *Griffin v. State,* 717 N.E.2d 73, 89 (Ind.1999). We review whether multiple convictions violate the prohibition against double jeopardy *de novo. Goldsberry v. State,* 821 N.E.2d 447, 458 (Ind.Ct. App.2005).

To prove robbery, as a Class B felony, the State was required to show that Troutner knowingly or intentionally took property from Philo by using force that resulted in bodily injury to Philo. Ind.Code § 35–42–5–1. And to prove battery, as a Class A misdemeanor, the State was required to show that Troutner knowingly or intentionally touched Philo in a rude, insolent, or angry manner, which resulted in bodily injury. I.C. § 35–42–2–1(a)(1). The State's charging information tracked the statutory language on the robbery allegation, Appellant's App. at 5, and it tracked the statutory language for Class C felony battery, which required the heightened showing that the bodily injury was serious, *id.* at 8.

Further, during its closing argument the State discussed the evidence as follows:

> Let's examine the class A misdemeanor battery causing bodily injury. The State must prove that [Troutner] touched ... Philo in a rude[,] angry or insolent manner, which said touching resulted in an injury. I think we can all agree that that happened. No question, he did it. By his own admission, he was angry. He touched him. There's no self-defense. Guilty of a class A misdemeanor battery, for sure.
>
> \*　　\*　　\*
>
> Let's move to robbery.... Knowingly and intentionally taking someone else's property by force resulting in bodily injury. In that one, not serious, but just bodily injury, and he had bodily injury. You saw his face, you saw his arms. Did he take Jim Philo's money? Yes.

No question about it. He had his money. Did Jim Philo suffer bodily injury? Yes. No question.... [T]he argument ... from the defense counsel is that, Well, he gave him the money, so it can't be robbery. That's the evidentiary issue, isn't it? James Philo said he took my money, he called 911. "He beat me up and took my money." He didn't say it quite that plainly....

Transcript at 337–40.

In *Richardson*, our supreme court held that, in light of the actual evidence presented by the State in that case, the defendant's convictions both for robbery, as a Class C felony, and for battery, as a Class A misdemeanor, violated Indiana's Double Jeopardy Clause. The court discussed the relevant facts as follows:

> In the present case, the evidence presented at trial establishes the following facts. On August 31, 1996, many people were at a lake area consuming alcohol and using drugs. The defendant noticed that one of those present, Jeff Koenig, appeared to possess a considerable amount of money. The defendant, along with Koenig and two other men, got into an automobile apparently to drive to another party. The automobile stopped on a bridge, and the men exited the vehicle, ostensibly to relieve themselves. When Koenig exited the vehicle, he was hit from behind with a beer bottle and knocked to the ground. The three men repeatedly kicked and beat him. Two of the men then held Koenig down while the third took Koenig's billfold from his pocket....

*Richardson*, 717 N.E.2d at 54.

*Richardson* is controlling precedent. Here, Troutner, Krista, and Philo left Monon together after Philo obtained a large sum of cash. Once outside the town, Troutner had Krista stop the vehicle ostensibly to relieve himself and, as he exited the vehicle, he began pummeling Philo. In the course of his attack, Troutner took Philo's wallet from his pocket. And at no point during the presentation or discussion of the evidence to the jury did the State identify part of the attack as the robbery and another part as the battery.

The State's evidentiary basis for Troutner's two convictions is stunningly similar to the evidence presented in *Richardson*. If the State violated our double jeopardy principles in *Richardson*, then it also did so here.[1] In other words, Troutner has demonstrated a reasonable possibility[2] that the evidentiary facts used by the jury to establish the essential elements of Class B felony robbery were also used to establish the essential elements of the Class A misdemeanor battery. *See id.; see also Burnett v. State*, 736 N.E.2d 259, 262–63 (Ind.2000) (holding that the defendant's convictions for robbery and battery violated Indiana's Double Jeopardy Clause), *overruled on other grounds, Ludy v. State*, 784 N.E.2d 459 (Ind.2003); *Owens v. State*, 742 N.E.2d 538, 544 (Ind.Ct.App.2001) (same), *trans. denied.*

---

1. It is of no moment that the State charged Troutner with Class B felony robbery, whereas the *Richardson* court considered a Class C felony robbery. The only distinction in the two classes of robbery is the additional essential element of bodily injury required by the State to prove the Class B felony robbery. But that element is also an essential element of the Class A misdemeanor battery conviction. Thus, while there is a difference between the two crimes of robbery, that difference does not affect our analysis of whether the evidence used for Troutner's battery conviction duplicates the evidence used to support his robbery conviction.

2. We note that the State mistakenly asserts that a "reasonable probability" is required under the actual evidence test. *See* Appellee's Br. at 7.

We are also not persuaded by the State's two arguments on appeal. First, the State asserts that, in light of *Spivey*, Troutner must demonstrate a "complete evidentiary overlap in order to satisfy the *Richardson* actual evidence test." Appellee's Br. at 7. That is, because robbery requires additional evidentiary showings, the State argues, the evidence of battery cannot create a double jeopardy issue with the evidence of robbery. But that argument is wholly negated by our supreme court's analysis in *Richardson*, where the court held that the battery conviction was duplicative of the defendant's robbery conviction. In the language of *Spivey*, here the evidentiary facts presented by the State to establish the essential elements of Troutner's robbery also established all of the essential elements of his battery. *See* 761 N.E.2d at 832–33.

The State also suggests that it supported each allegation with distinct evidence because Troutner "used force beyond that necessary for the robbery, which then constituted the additional offense of battery." Appellee's Br. at 7. In *Smith v. State*, 881 N.E.2d 1040, 1046–47 (Ind.Ct. App.2008), on which the State relies for double jeopardy purposes, we discussed a similar argument as follows:

> Smith argues that his convictions for robbery and criminal confinement violate Indiana Code section 35–38–1–6[, which prohibits entry of a judgment of conviction on both an offense and a lesser-included offense if the State charged both crimes,] because, pursuant to the facts of this case, confinement is a lesser-included offense of robbery. Specifically, Smith argues that "the same acts of force, striking [Officer] Wheeler and sitting on her, may not be used as the basis for both convictions."
>
> Indiana Code section 35–38–1–6 protects defendants charged with an offense

and a lesser-included offense from being found guilty of both charges because this would be tantamount to convicting a defendant twice for the same conduct. *Harvey v. State*, 719 N.E.2d 406, 411 (Ind.Ct.App.1999). An offense is inherently included in another when it may be established by proof of the same material elements or less than all the material elements that define the "greater" crime charged. *Id.* An offense is factually included in another when the charging instrument alleges "the means used to commit the crime charged include all of the elements of the alleged lesser included offense." *Id.*

> We have previously held that confinement is inherently included in robbery because the "use or threat of force" element needed to support the robbery conviction is not distinct from the "confinement" element needed to support the criminal confinement conviction. *Harvey*, 719 N.E.2d at 411. Therefore, "[u]nless there is force used beyond that which is inherently necessary in any robbery, there cannot be a separate criminal confinement conviction." *Id.*

> At the sentencing hearing, Smith argued that his robbery and criminal confinement convictions violate Indiana Code section 35–38–1–6. The trial court disagreed, concluding:
>
> > All right, well the Court believes that it would not be a lesser[-included offense] as there was a separate act in that they removed her to another area and confined her in that bathroom, which in the Court's opinion was a separate act other than the sitting on her in the [control booth].... That the initial act began in the control room. She was hit and held there but eventually taken to the bathroom and confined in the bathroom. So, I think

that is a separate act and it's not a lesser included.

We agree with the trial court that dragging Officer Wheeler to the control booth's bathroom constituted force beyond that necessary for the robbery. The evidence presented at trial showed that [his confederate] Whiters continued to sit on Officer Wheeler's back while Smith attempted to unlock the nearby door with the control booth computer. Had this been the only evidence of confinement, we would be inclined to vacate Smith's criminal confinement conviction. However, Whiters then used additional force by dragging Officer Wheeler to the bathroom to further confine her. This additional force "was more extensive than that necessary to effect the robbery." *Merriweather v. State,* 778 N.E.2d 449, 457 (Ind.Ct.App.2002). Thus, Smith's convictions for both offenses do not violate Indiana Code section 35–38–1–6.

(Some alterations original, footnotes and citations to the record omitted.)

The State's reliance on *Smith* is misplaced for two reasons. First, the above discussion was based on Indiana Code Section 35–38–1–6, not on *Richardson* or the actual evidence test.[3] Second, but more importantly, the *Smith* court was careful to emphasize that there were distinct facts supporting the two convictions. Namely, after committing the robbery, the defendant in *Smith* then took an additional act, through forceful means, to confine the victim. There are no analogous facts in this case. Rather, as the prosecutor summarized to the jury, the evidence supporting both of Troutner's convictions amounted to nothing more than, "He beat me up and took my money." Transcript at 340. The

degree to which Troutner beat Philo is irrelevant absent a clear delineation of the evidence in that respect to the jury. Absent such a clear delineation, there is a reasonable possibility that the jury did not consider the degree to which Troutner beat Philo and instead only considered the fact that Troutner did beat Philo.

In sum, *Richardson* is controlling precedent. In light of our supreme court's holding in that case, we likewise hold that there is a reasonable possibility that the jury used the same evidence to find Troutner guilty of both robbery and battery. Accordingly, we vacate Troutner's conviction for battery and its corresponding sentence.

### Issue Two: Limitation to Krista's Testimony

 Troutner also asserts that the trial court abused its discretion when it limited Krista's testimony and prevented her from testifying that she had heard Troutner call Philo a child molester and had heard Troutner make a comment to Philo "about buying his niece." *Id.* at 321. Our standard of review of a trial court's admission or exclusion of evidence is an abuse of discretion. *Speybroeck v. State,* 875 N.E.2d 813, 818 (Ind.Ct.App.2007). A trial court abuses its discretion only if its decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.* In reviewing the admissibility of evidence, we consider only the evidence in favor of the trial court's ruling and any unrefuted evidence in the defendant's favor. *Dawson v. State,* 786 N.E.2d 742, 745 (Ind.Ct.App.2003), *trans. denied.*

Here, the State objected to Krista's proffered testimony on the grounds that it

---

**3.** In another part of the *Smith* opinion, this court vacated the defendant's aggravated battery conviction because the actual evidence

presented by the State was used to support both that conviction and the defendant's conviction for robbery. 881 N.E.2d at 1047–48.

was inadmissible hearsay.[4] The State is incorrect. The statements are not hearsay because they were not being offered for the truth of the matter asserted. *See* Ind. Evidence Rule 801(c). Again, Krista would have testified that, during the altercation, she heard Troutner call Philo a child molester and made a comment to Philo "about buying his niece." *Id.* at 321. Those statements were not being offered for the truth of the matters asserted but, rather, to show that Troutner acted out of passion rather than knowingly or intentionally. And if Troutner did not act knowingly or intentionally, then the State could not convict him of either of its allegations.[5] *See* I.C. §§ 35–42–2–1, 35–42–5–1. Thus, the statements were not hearsay, and the trial court erred when it concluded otherwise.

 But not all error is reversible error. It is well established that a claim of error in the admission or exclusion of evidence will not prevail on appeal " 'unless a substantial right of the party is affected.' " *Pruitt v. State,* 834 N.E.2d 90, 117 (Ind. 2005) (quoting Evid. R. 103(a)). That is, even if the trial court errs in admitting or excluding evidence, this court will not reverse the defendant's conviction if the error is harmless. *See Fleener v. State,* 656 N.E.2d 1140, 1141–42 (Ind.1995). An error is harmless when the probable impact of the erroneously admitted or excluded evidence on the jury, in light of all the evidence presented, is sufficiently minor so as not to affect the defendant's substantial rights. *Id.* at 1142.

 Although we agree with the State that the trial court's error here was harm-

less, we disagree with the State's rationale that Krista's proffered testimony was "merely cumulative" to Troutner's testimony. Appellee's Br. at 12. Krista's proffered testimony was offered to corroborate Troutner's testimony, and Troutner's credibility was a central issue in the case. In such circumstances, the additional testimony is not merely cumulative. *See, e.g., Littler v. State,* 871 N.E.2d 276, 278–79 (Ind.2007).

We are also mindful that, in an older case, this court held that the exclusion of corroborating testimony was prejudicial to the defendant's claim of self-defense in a murder trial:

> The excluded testimony would have tended to corroborate part of the testimony of Nuss[, the defendant]. Thus, while the evidence in question might have been cumulative, it was extremely critical to Nuss' defense. This is in accordance with the view that the propriety of the trial court's admission or exclusion of corroborating evidence must depend upon the status of the evidence which it tends to corroborate. In view of the fact that Nuss' credibility was of utmost importance to his defense, the wrongful exclusion of any evidence which would tend to corroborate his testimony or lend credence to his defense would not be without prejudice to his substantial rights.

*Nuss v. State,* 164 Ind.App. 396, 407–08, 328 N.E.2d 747, 754–55 (1975) (citation

---

4. Troutner also addresses Indiana Evidence Rules 403 and 404 on appeal, but the State did not articulate an objection on those grounds and does not defend the trial court's decision under those rules on appeal.

5. For the same reason, we reject the State's multiple arguments that Krista's proffered testimony was not relevant if not offered for the truth of the matter asserted.

omitted); *see also Hirsch v. State*, 697 N.E.2d 37, 42 (Ind.1998) ("If the wrongful exclusion of testimony of a third party that is possibly cumulative but corroborates the defendant is grounds for reversal[, as in *Nuss*,] the obverse situation—the exclusion of testimony by the defendant that would have corroborated a third party—is an *a fortiori* case.").

Nonetheless, we do not read *Nuss* or similar cases to create a per se rule of prejudicial error. Rather, as more recent case law from our supreme court reiterates, "[h]armlessness is ultimately a question of the likely impact of the evidence on the jury." *Witte v. Mundy*, 820 N.E.2d 128, 135 (Ind.2005). For example, in *Miller v. State*, 720 N.E.2d 696 (Ind. 1999), our supreme court considered whether it was reversible error to prevent the defendant from testifying that friends had made him aware of the victim's threatening remarks against him in the days leading up to the defendant's killing of the victim. Our supreme court held that, although the trial court had erroneously excluded that part of the defendant's testimony, the error was harmless:

> Although we find the trial court erroneously excluded Defendant's testimony, we find the error harmless. Defendant established that [the victim,] Frierson[,] had a reputation for violence in the community. He also introduced evidence regarding his perceived fear of Frierson: he described Frierson's violent robbery of him including being struck with the butt of Frierson's assault rifle and the threats made on his life during the encounter; he expressed his general fear of being shot by Frierson; he was under the impression that Frierson was armed with a weapon that day; and, he testified that he was frightened when he saw Frierson at the gas station. Accordingly, in light of all the evidence, the exclusion had a sufficiently minor impact on

the jury so as not to affect the substantial rights of Defendant.

*Id.* at 705.

Likewise here, in light of all the evidence before the jury, the excluded portion of Krista's testimony would have had a minor impact on the jury. Philo testified that the attack was unprovoked and that, during the attack, Troutner took his money. Five arresting officers testified that they seized $334 in cash from Troutner shortly after the attack, that Troutner's hands were bloodied, and that Troutner and Krista had blood on their clothing, including around Troutner's pocket where he had placed the cash. One of those officers also testified that Krista stated that she had not been on the road where officers found Philo and that Philo had not been in her car. Another of those officers testified that Troutner had informed him that his hand injury was the result of a dog bite. Still another officer testified that Troutner had stated at the time of arrest that he and Krista had just come into town for some cigarettes.

Contrary to the story he told an arresting officer, Troutner testified that he had beat up Philo but only after Philo provoked him by offering to "buy" Krista. Troutner also admitted that he took Philo's cash, but that he did so before the battery and only because he was drunk. Krista's testimony also contradicted her earlier statements to officers. In the part of her testimony the jury was permitted to hear, Krista corroborated Troutner's version of events: she testified that Troutner and Philo had engaged in a conversation prior to the attack, although she could not hear what was being said between them. Krista also testified, as did Troutner, that she pulled the car over at Troutner's request and, after Philo crawled out of the driver's side door, she and Troutner left the scene.

**614**

Finally, in his closing remarks, the prosecutor called into question Troutner's version of events:

> it doesn't make a whole lot of sense. And I asked you at the beginning of the trial to use your common sense. Place yourself in the same position in the same vehicle. And even if James Philo did say, which I don't believe in a minute that he did ... How about your niece? Let's say Jim Philo did do that, and you were the person in the back? Would you, number one, grab his money and put it in your pocket? I don't think so. If you were that upset by that comment, both people having drank a lot, if you were that upset, wouldn't you just say, You idiot, what are you talking about, and if you were further upset, wouldn't you say, Krista, niece, stop the car and get this Bozo out of my car. I don't want him in here anymore. Would you really take his money and then say, Oh, by the way, niece, I have to use the restroom, please stop the car, and get out and pummel him, just beat the living poo out of him? Let's go one step further. Even if you did that, even if you took his money, had your niece stop the car, pummel[ed] him, and he gets out of the car, wouldn't you then reach in and throw the money in the guy's face and say, I don't want your—you know, that offends me.

Transcript at 340–41.

In light of all the evidence before the jury, we must conclude that the court's erroneous exclusion of Krista's further testimony regarding the statements she heard Troutner say to Philo during the attack was harmless. The probable impact of Krista's excluded testimony would have been sufficiently minor so as to not affect Troutner's substantial rights. Accordingly, we affirm Troutner's conviction for robbery, as a Class B felony.

**Conclusion**

In sum, the State used the same evidence to support both of Troutner's convictions. And although the trial court erred in excluding part of Krista's testimony, that error was harmless. Thus, we affirm Troutner's conviction for robbery, as a Class B felony, but we vacate his conviction and concurrent sentence for battery, as a Class A misdemeanor.

Affirmed in part and reversed in part.

ROBB, C.J., and CRONE, J., concur.