**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 23 2013, 6:17 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**PATRICIA CARESS MCMATH**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW FALK**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ANTHONY SHOCKLEY, | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1212-CR-957 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Robert Altice, Judge
Cause No. 49G02-1106-MR-42263

**July 23, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issues

Following a jury trial, Anthony Shockley was convicted of murder, a felony, and attempted robbery, a Class C felony. He now appeals, raising several issues, which we restate as follows: 1) whether the trial court properly admitted evidence of Shockley's involvement in a prior shooting; 2) whether the trial court properly excluded evidence of statements made by a co-defendant exculpating Shockley; and 3) whether the abstract of judgment should be corrected. Concluding there was no error in the admission or exclusion of evidence, we affirm Shockley's convictions, but remand for the limited purpose of correcting the abstract of judgment.

## Facts and Procedural History

The facts most favorable to the convictions reveal that on the night of June 4, 2011, and into the morning of June 5, Shockley went along with Jamar Perkins and Johnathan Williams to an apartment complex named Bavarian Village Apartments so that Williams could sell his cell phone. Williams was driving his grandmother's white Chevrolet Blazer. After parking the car, Williams saw a man on the sidewalk. Perkins said, "[l]et's get him," transcript at 57, but Williams indicated that he should calm down and went inside the apartment complex. As he was half-way down the stairs, he heard gunshots. He observed Shockley shooting one or two bullets at the victim, Clayton Battice. Battice was a sixty-one year old man who lived in the apartment complex and was on his way home from work that night. He died as a result of his gunshot wounds.

Shockley was charged with murder and, along with Perkins, felony murder, attempted robbery, and use of a firearm.[1] Upon motion by the State, Shockley and Perkins were tried separately with Shockley being tried first. Prior to trial, the State filed a notice of intent to introduce evidence of a shooting earlier on the night of June 4, 2011, at an apartment complex named The Cottages that Shockley was allegedly involved in. Over objection from Shockley, the trial court allowed admission of the evidence but indicated that it did not "want to hear a bunch of stuff about" it and requested that the State prepare a limiting instruction. See Tr. at 19. Also prior to trial, Shockley indicated that he wanted to introduce evidence of letters written by Perkins and sent to the prosecutor and to the court, indicating that he and Shockley had traded guns the night of the shootings and that Shockley was innocent of the charges against him. The court found the letters to be unreliable and refused to allow the evidence.

After the jury trial, during which Williams testified regarding the shootings that took place in The Cottages and Bavarian Village, Shockley was found guilty of murder, felony murder, and attempted robbery. The trial court merged the murder and felony murder charges and entered judgment of conviction for murder, a felony, and attempted robbery as a Class C felony. Shockley was sentenced to sixty years for the murder and four years for the attempted robbery, to run concurrently. Shockley now appeals. Additional facts will be provided as necessary.

---

[1] Williams was charged with two counts of assisting a criminal.

I. Evidentiary Rulings

A. Standard of Review

A trial court has broad discretion in ruling on the admissibility of evidence. Packer v. State, 800 N.E.2d 574, 578 (Ind. Ct. App. 2003), trans. denied. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. Troutner v. State, 951 N.E.2d 603, 611 (Ind. Ct. App. 2011), trans. denied. An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. Id.

B. Admitted Evidence

Shockley contends that the trial court erred by admitting evidence of the prior shooting that took place on the night in question. Indiana Evidence Rule 404(b) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." The rationale behind this evidentiary rule is that the jury is precluded from making the "forbidden inference" that the defendant had a criminal propensity and therefore committed the charged conduct. Thompson v. State, 690 N.E.2d 224, 233 (Ind. 1997). To determine whether Rule 404(b) evidence is admissible, "(1) the court must determine that the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to

4

commit the charged act; and (2) the court must balance the probative value of the evidence against its prejudicial effect pursuant to Rule 403." Id.

This court has held that "[e]vidence that a defendant had access to a weapon of the type used in a crime is relevant to a matter at issue other than the defendant's propensity to commit the charged act." Pickens v. State, 764 N.E.2d 295, 299 (Ind. Ct. App. 2002), trans. denied. Shockley appears to concede that evidence of the prior shooting was relevant to prove he had access to the murder weapon. He argues, however, that the probative value of this evidence was outweighed by its prejudicial effect. We disagree.

Evidence of the prior shooting was highly probative that Shockley had access to the murder weapon. This is especially true in light of the fact that Shockley argued, during closing, that it was someone else who had committed the murder. Williams testified that Shockley had a .22 caliber long rifle while Perkins had a .380 pistol the night of the shootings. Williams further testified that he had observed Shockley fire the .22 rifle during the first shooting. Moreover, police determined that the .22 caliber casings recovered from The Cottages, Bavarian Village, and the victim's body were fired by the same .22 caliber rifle found near the home of Shockley's grandmother. The fact that Williams was the same witness who testified regarding both shootings goes towards the weight of the evidence and not its admissibility.

The probative value of this evidence was not outweighed by its prejudicial effect. Any possibility of the jury making the forbidden interference was cured by the limiting instruction read to the jury.[2] Moreover, the trial court was careful to limit the scope of

---

[2] The jury was instructed as follows:

the evidence presented regarding the prior shooting. While the court admitted evidence that the shooting took place and that similar .22 caliber cases were found at the scene of the prior shooting, there was no evidence regarding who, if anyone, was hurt during the first shooting and whether Shockley was charged with any additional crimes. See Thompson, 690 N.E.2d at 233-35 (holding that while evidence of a prior theft, during which the defendant stole the murder weapon, was relevant to prove access to the weapon, the trial court abused its discretion in the quantity and quality of the evidence admitted—including that the theft victim died and that the defendant was convicted of his murder). And while Shockley argues that evidence of the prior shooting was not necessary to prove access to the murder weapon, evidence is not automatically excluded even if it is cumulative. See Hyde v. State, 451 N.E.2d 648, 650 (Ind. 1983) ("The admission or rejection of cumulative evidence . . . lies within the sound discretion of the trial court, and its ruling thereon will not constitute reversible error unless an abuse of that discretion is clearly shown."). In sum, the trial court did not abuse its discretion in admitting evidence of the prior shooting Shockley was allegedly involved in.

## C. Excluded Evidence

Shockley contends that the trial court erred by excluding evidence of the three letters written by Perkins exculpating him. Generally, out of court statements offered to

---

Evidence has been introduced that the defendant may have been involved in an act other than those charged in the information, specifically, that he allegedly fired shots at a location other than the Bavarian Village Apartments on June 5, 2011, that is, the Cottages. This evidence is not admissible to show that the defendant has a bad character.

If you believe that this earlier incident happened, you should consider it only as it might relate to the defendant's identity and access to a weapon.

It is for you to decide what weight, if any, to give this evidence.

Appellant's Appendix at 126. Despite the language of the limiting instruction, in light of our holding that evidence of the prior shooting was properly admitted to prove access to the murder weapon, we need not address whether it was also properly admitted to prove Shockley's identity.

prove the truth of the matter asserted are not admissible into evidence. See Ind. Evidence Rule 802. Indiana Evidence Rule 804(b) provides a number of exceptions, however, to the hearsay rule if the declarant is unavailable as a witness, allowing, in part, admission of a statement against interest, which is defined as:

> [a] statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.

Evid.R. 804(b)(3). Here, it is undisputed that Perkins was unavailable to testify at trial. However, the trial court found the letters to be unreliable and refused to admit them on that basis. Shockley argues that this was done in error. We disagree.

This court has held that the requirement of reliability is embodied within the hearsay exception allowing the admission of statements against interest. See Bryant v. State, 794 N.E.2d 1135, 1142-43 (Ind. Ct. App. 2003), trans. denied. Thus, the trial court was within its discretion to consider the reliability of the letters written by Perkins and offered into evidence by Shockley. Shockley cites the case of Swanigan v. State, 720 N.E.2d 1257 (Ind. Ct. App. 1999), to argue, however, that the trial court should have only considered the content of the letters themselves in determining their reliability. In Swanigan, the court held that the trial court had properly excluded letters written by an unavailable witness based on the information contained within them. Id. at 1260. In so doing, it noted that the letters contained references to the witness's drug and alcohol addiction and mental illness as well as contradictory information regarding his culpability. Id. The trial court had also observed the witness on the stand and found him not credible. Id.

7

While the letters here may not have contained contradictory information or references to any mental health issues as the letters in Swanigan did, the trial court found that the statements in the letters directly contradicted Perkins's testimony, given under oath, at his guilty plea hearing, during which he indicated that Shockley was the shooter in the murder. The trial court noted that it was "a more specific, explicit detailed guilty plea than I normally take in this Court." Tr. at 12. The trial court also noted that the letters contradicted the statement given by Perkins to police and that they arrived at the eve of Perkins's sentencing hearing and on the morning of Shockley's trial. Moreover, the State was ready to present evidence that Perkins had told his attorney that he had received threats from someone on behalf of Shockley to write the letters. This information could have reasonably led the trial court to believe that the letters were not reliable. See Bryant, 794 N.E.2d at 1143 (holding that the exclusion of a statement against interest was not a strong issue for appeal where the confession did not match the circumstances of the robbery with which the defendant was charged, the statement was uncorroborated, and it was not made to a disinterested witness). We therefore find that the trial court did not abuse its discretion in excluding the letters based on their unreliability.

## II. Abstract of Judgment

Both parties note that the abstract of judgment incorrectly states that Shockley's conviction for attempted robbery was a Class A felony when it was in fact a Class C felony. We therefore remand to the trial court with instructions to correct the abstract of

judgment to reflect that the conviction for attempted robbery was entered as a Class C felony.

Conclusion

The trial court did not err in admitting evidence of Shockley's involvement in a prior shooting or in excluding evidence of statements made by a co-defendant exculpating him. We therefore affirm Shockley's convictions, but remand for the limited purpose of correcting the abstract of judgment.

Affirmed and remanded.

FRIEDLANDER, J., and CRONE, J., concur.