Bryson BURNETT, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 49S00–9905–CR–287.

Supreme Court of Indiana.

Oct. 5, 2000.

Teresa D. Harper, Bloomington, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Randi E. Froug, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

BOEHM, Justice.

Bryson A. Burnett was convicted of robbery, two counts of criminal confinement, aggravated battery, carrying a handgun without a license, pointing a firearm, auto theft, theft, and being a habitual offender. He was sentenced to 100 years imprisonment. In this direct appeal, Burnett contends that (1) the trial court abused its discretion in giving the State's instruction on eyewitness testimony; (2) there is insufficient evidence to sustain the habitual offender enhancement; and (3) his convictions for both robbery and aggravated battery and for pointing a firearm and criminal confinement violate the Indiana Double Jeopardy Clause. We affirm the judgment of the trial court in part and remand with instructions to vacate the convictions for aggravated battery and pointing a firearm.

### Factual and Procedural Background

On August 17, 1998, Angila Plummer was talking with a neighbor outside her home when Burnett approached her and asked if she remembered him. When Angila said that she did not, Burnett told her that his name was "Andre" and he had lived across the street the preceding summer. Approximately fifteen minutes later, Burnett knocked on Angila's door and asked to use the phone. Angila agreed and, after making a call, Burnett thanked her and left the house.

Burnett returned later that afternoon and again asked to use the phone. After finishing his call, Burnett turned on Angila with a knife, stabbed her in the neck and eyebrow, and then repeatedly struck her in the eye. Burnett took a cellular phone, a beeper, and money from Angila's purse. Burnett next drew a handgun from his pocket, pointed it at Angila's four-year-old daughter, Heather, and told Heather to go upstairs, which she did. Heather came back downstairs and Burnett ordered Angila to take her upstairs. Burnett then left the house with the keys to Angila's car and Angila called the police.

Early the next morning, Burnett walked into a convenience store, yelled, "Hello, beautiful people," removed almost two hundred dollars from the cash register, and drove away. A clerk wrote down the license plate number and reported the incident to police, who identified the car used in the robbery as Angila's. Later that afternoon, the clerk saw Burnett near her home, recognized his voice when he yelled at her son, and called the police.

Officers arresting Burnett found him with two knives and a check written on Angila's account. The clerk subsequently identified Burnett from a photo array as the store robber. Burnett then admitted to taking money from the convenience store and money and car keys from Angila's house, but claimed that Angila had been injured by a letter opener that "ended up in her neck." Burnett was charged with robbery, two counts of criminal confinement, attempted murder, carrying a handgun without a license, pointing a firearm, auto theft, theft and being a habitual offender. He was convicted of aggravated battery as a lesser included offense of attempted murder and on all other counts. An aggregate sentence of 100 years was imposed.

## I. Jury Instruction

■ Burnett first claims that the trial court abused its discretion by giving the State's Tendered Proposed Instruction No. 5, which read: "A conviction may be sustained by the uncorroborated testimony of a single eyewitness." Burnett acknowledges that this instruction has been upheld in the past by this Court, but contends that it is time to revisit the issue because the instruction unfairly focused attention on the testimony of one witness, Angila.[1] Burnett argues that giving this instruction was especially influential here, where Burnett's version of the crime was relayed to the jury through the testimony of a police officer.

In *Madden v. State*, this Court upheld a similar instruction where the defendant challenged that the instruction "overemphasize[d] the testimony of the victim." 549 N.E.2d 1030, 1033 (Ind.1990). This Court approved of the instruction in cases where the victim was the only testifying witness to the crime because it was "unrealistic to take the position that it was necessary for the prosecuting witness's testimony to be corroborated by other evidence." *Id.* In this case, as in *Madden*, the victim was the only testifying eyewitness to each crime. There were no other instructions on point and this instruction did not unfairly focus attention on Angila's testimony. The trial court did not abuse its discretion in giving it. *See id.* ("Inasmuch as the instruction was not repeated in other instructions, we cannot say that it was repetitious or unduly emphasized a particular aspect of the case.").

## II. Sufficiency of the Evidence

Burnett also challenges the sufficiency of the evidence to support the habitual offender enhancement. Specifically, he contends that the habitual offender finding must be set aside because the State did not prove that the prior convictions were "unrelated," although his argument boils down to a claim of lack of proof that the supporting convictions were "prior" to the current one.

■ Our standard of review for sufficiency claims is well settled. We do not reweigh evidence or assess the credibility of witnesses. Rather, we look to the evidence and reasonable inferences drawn therefrom that support the verdict and will affirm the conviction if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Taylor v. State*, 681 N.E.2d 1105, 1110 (Ind.1997).

■ To prove that a defendant is a habitual offender, the State must prove that

---

1. Although Burnett was also convicted of theft in connection with the convenience store incident, he does not contend that the instruction overemphasized the testimony of the clerk of the store, who was also a single testifying eyewitness to one of Burnett's crimes.

"the person had accumulated two (2) prior unrelated felony convictions." Ind.Code § 35–50–2–8(d) (1998).

[T]o sustain a sentence under [the statute], the State must show that the defendant had been twice convicted and twice sentenced for felonies, that the commission of the second offense was subsequent to his having been sentenced upon the first and that the commission of the principal offense upon which the enhanced punishment is being sought was subsequent to his having been sentenced upon the second conviction.

*Steelman v. State*, 486 N.E.2d 523, 526 (Ind.1985) (quoting *Miller v. State*, 275 Ind. 454, 459, 417 N.E.2d 339, 342 (1981)). Burnett argues that because there is no commission date for the second offense in the record, the State has not proven that the second offense occurred after the sentencing for the first.

■ To prove the habitual offender enhancement, the State first introduced an arrest report dated June 27, 1985, which showed that Burnett had been arrested for burglary, robbery, confinement, and theft. The State then introduced an abstract of judgment and minute entry, which showed that Burnett pleaded guilty to two of those crimes and was sentenced on October 17, 1985. The State attempted to prove the second felony conviction with an arrest report from August 9, 1993, for criminal confinement and burglary. Finally, the State introduced an abstract of judgment and order of probation, which showed Burnett was convicted and sentenced for criminal recklessness under the same cause number on December 8, 1993.

Although the better practice is to offer direct evidence of the commission date of the second offense, a reasonable jury could have concluded that Burnett committed his second felony after receiving his sentence for the first. The evidence presented in-

cluded that the arrest date of the second offense was almost eight years after the sentencing for the first offense. *See Clark v. State*, 597 N.E.2d 4, 12 (Ind.Ct.App. 1992) (inclusion of arrest dates and sentencing dates was sufficient to prove the habitual offender enhancement). From this it can be inferred that the criminal recklessness must have been committed after August 1988 because the statute of limitations for a Class D felony is five years. Ind.Code § 35–41–4–2 (1998). These are, of course, matters within the knowledge of the defendant, and there was no evidence suggesting the commission date was earlier than 1988. This record contains sufficient evidence to support the habitual offender finding.[2]

### III. Double Jeopardy

■ Burnett finally contends that his multiple convictions violate the Indiana Double Jeopardy Clause. Ind. Const. art. I, § 14. Specifically, Burnett argues that he cannot be convicted of both (1) robbery as a Class A felony and aggravated battery and (2) pointing a firearm and criminal confinement. The Indiana Double Jeopardy Clause prohibits multiple convictions if there is "a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Richardson v. State*, 717 N.E.2d 32, 53 (Ind.1999); *accord Wise v. State*, 719 N.E.2d 1192, 1201 (Ind.1999).

■ The Class A felony robbery charge, which was read to the jury as part of the preliminary instructions, alleged that Burnett took items from the person of Angila by force and threats of force which resulted in serious bodily injury, i.e., "a laceration to the head and a stab wound to the neck of Angila Plummer." The lesser included aggravated battery, a Class B felony, was based on the attempted murder

**2.** In this respect, this case differs from *Steelman*, where this Court raised the issue of the defendant's habitual offender enhancement sua sponte. In *Steelman*, the only informa-

tion regarding the second offense was the conviction and sentencing dates, and there was no proof of commission of the crime or the time of arrest. 486 N.E.2d at 525–526.

charge which alleged that Burnett attempted to kill Angila "by stabbing [her] in the neck." In its closing argument, the State told the jury that "stabbing someone in the neck creates a substantial risk of death" for the Class A robbery and that the substantial step in the attempted murder of Angila was "when [Burnett] put the knife or letter opener into Angila Plummer's neck." Based on these instructions and argument, there is a reasonable possibility that the same evidence used by the jury to establish the essential elements of aggravated battery was also included among the evidence establishing the essential elements of robbery as a Class A felony. Thus, Burnett's dual convictions for robbery as a Class A felony and aggravated battery violate the Indiana Double Jeopardy Clause. Accordingly, we remand to the trial court with instructions to vacate the aggravated battery conviction.

 Burnett also contends that his convictions for pointing a firearm and criminal confinement violate the Indiana Double Jeopardy Clause. The preliminary instructions for pointing a firearm stated that Burnett "did knowingly point a firearm, that is: a handgun at another person, namely: Heather Plummer." The criminal confinement charge stated that Burnett "point[ed] said handgun at Heather Plummer." The evidence at trial showed that Burnett pointed the handgun at Heather once and told her to go upstairs. Later, when he ordered both Angila and Heather upstairs, the undisputed evidence was that Burnett's gun was in his pocket, and was not pointed at either Angila or Heather. During closing argument, the State contended that Burnett confined Angila and Heather when he "held a gun on [Heather]." Although there was evidence presented at trial that could have supported both the pointing a firearm charge

and the criminal confinement charge, the inquiry does not end there. The preliminary instructions relied on the same act, pointing the gun at Heather, as the basis for the pointing a firearm and confinement charge, and the State pointed to this same evidence in its closing argument. Once again there is a reasonable possibility that the same evidence used by the jury to establish pointing a firearm was also included among the evidence establishing the essential elements of the criminal confinement of Heather. Accordingly, the pointing a firearm charge must be vacated.[3]

### Conclusion

The judgment of the trial court is affirmed in part. This case is remanded to the trial court with instructions to vacate the convictions for aggravated battery and pointing a firearm.

SHEPARD, C.J., and DICKSON, SULLIVAN, and RUCKER, JJ., concur.

---

**3.** Burnett also argues that one of his criminal confinement convictions should be vacated because pointing the gun at Heather was an element of each. However, this Court has previously held that multiple confinement convictions do not violate double jeopardy where there are multiple victims. *Cf. Parks v. State,* 489 N.E.2d 515, 516 (Ind.1986) (pre-*Richardson* case). Here, Burnett confined both Angila and Heather. Therefore, there is no double jeopardy violation.