**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**VICTORIA L. BAILEY**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JOSEPH Y. HO**
Deputy Attorney General
Indianapolis, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

| | |
|---|---|
| ANTHONY WILSON, | ) |
| | ) |
| Appellant-Defendant, | ) |
| | ) |
| vs. | ) No. 49A02-1212-CR-956 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Plaintiff. | ) |

---

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Lisa F. Borges, Judge
Cause No. 49G04-1111-FA-83273

---

**June 24, 2013**


**MEMORANDUM DECISION - NOT FOR PUBLICATION**


**BROWN, Judge**

Anthony Wilson appeals his convictions for robbery as a class A felony and aggravated battery as a class B felony.  We address the following issues:

I.      Whether the trial court committed fundamental error in not giving a definitional instruction; and

II.     Whether Wilson's convictions violate Indiana's prohibition against double jeopardy.[1]

We affirm in part, reverse in part, and remand.

FACTS AND PROCEDURAL HISTORY

On November 5, 2011, Oladiran Falana, who was from Nigeria and had been in the United States since April of 2010, contacted a man who had listed an iPhone for sale on Craigslist, an internet website, and was told by the man to meet him at a certain street address in Indianapolis.  Using his GPS to provide directions to an area of town he had never visited, Falana drove his vehicle to the address he was given, and Anthony Akinade, Falana's cousin, who had been in the United States for a couple of weeks, accompanied Falana and rode in the front passenger seat of the vehicle.  When the two arrived at the address, they did not see a house, Falana called the man he had previously spoken with, and the man told Falana to meet him at the corner of the intersection down the street.  Falana drove to the intersection, and he and Akinade exited the vehicle.  They observed Wilson and another man approaching them on foot, and Falana observed that Wilson was holding a plastic bag containing an iPhone.  Falana wanted to see the phone, but Wilson told him that they needed to drive to his house up the street because it would

---

[1] We address this issue sua sponte.

be safer. Falana and Akinade entered the front seats of Falana's vehicle, and Wilson and the other man entered the backseat of the vehicle.

As Falana began to drive, he noticed that Wilson motioned to someone in a white truck parked nearby, and the truck pulled behind Falana's vehicle. Wilson pulled out a pistol, aimed it towards Falana's neck, and ordered Falana and Akinade to empty their pockets. Falana began to accelerate the vehicle to attempt to reach a main street to yell for help. The man in the backseat with Wilson held Akinade's neck and began to strangle him. Wilson struck Falana in the back of the head with the pistol. Because he could not breathe, Akinade tried to pry off the man's hand so he could yell for help.

While the vehicle was moving, Akinade was thrown or pushed out of the vehicle and fell onto the road, resulting in Akinade fracturing his left arm and sustaining other scrapes and bruises.[2] The man who had been strangling Akinade told Wilson to shoot Falana. Falana slammed on the brakes and exited the vehicle, and Wilson also exited the vehicle and began punching Falana. Falana managed to escape, began to run away, and heard two gunshots behind him. Falana stopped another person who was exiting a vehicle and explained what had happened, and the person called the police. Falana then looked to see his vehicle but it was gone. The police arrived at the scene, and an ambulance took Akinade to the hospital. Indianapolis Metropolitan Police Detective Grace Sibley visited Akinade in the hospital. That evening, Akinade underwent surgery on his left arm. Falana returned to the area of the incident the following day, discovered Akinade's jacket on the side of the street, eventually located his vehicle parked in a cul-

---

[2] The hospital discharge notes, admitted as State's Exhibit 9, indicated that Akinade was pushed out of a car going about twenty to thirty miles per hour.

de-sac, and called the police. Falana noted that the passenger door had been damaged and that his cell phone and GPS were not in the vehicle.

On November 30, 2011, the State charged Wilson with Count I, robbery as a class A felony; Count II, aggravated battery as a class B felony; Count III, carjacking as a class B felony; and Count IV robbery as a class B felony. The State later moved to dismiss Count IV, which the court granted. On August 9, 2012, the State alleged that Wilson was an habitual offender. On August 13, 2012, a jury found Wilson guilty on Counts I and II and not guilty on Count III. The court found Wilson to be an habitual offender and sentenced Wilson to thirty years on Count I, enhanced by thirty years for his adjudication as an habitual offender, and a concurrent ten years on Count II.

## DISCUSSION

## I.

We first address whether the trial court committed fundamental error in not giving a definitional instruction. Ind. Code § 35-42-5-1 provides that a person who knowingly or intentionally takes property from another person or from the presence of another person by using or threatening the use of force on any person or by putting any person in fear commits robbery, a class C felony. The statute also provides that "the offense is . . . a Class A felony if it results in serious bodily injury to any person other than a defendant." As Wilson acknowledges, at trial he did not object to the lack of a jury instruction on the definition of "serious bodily injury," nor did he offer any instruction regarding the definition to the court. To circumvent waiver, Wilson contends that the court's failure to instruct the jury, *sua sponte*, on the statutory definition of "serious

4

bodily injury" constituted fundamental error. At the time of the offense, "serious bodily injury" meant "bodily injury that creates a substantial risk of death or that causes: (1) serious permanent disfigurement; (2) unconsciousness; (3) extreme pain; (4) permanent or protracted loss or impairment of the function of a bodily member or organ; or (5) loss of a fetus." (Subsequently repealed by Pub. L. No. 114-2012, §§ 103-132 (eff. July 1, 2012)). Wilson asserts that the phrase "serious bodily injury" has "a specific definition pursuant to statute that would simply be unknown and unknowable to jurors absent an instruction defining it for them." Appellant's Brief at 11. The State maintains that Wilson "has failed to show that the jury could not determine what 'serious bodily injury' was in light of the given jury instructions and common usage of the terms" and the evidence presented at trial. Appellee's Brief at 13.

Our standard of review for claims of fundamental error is well settled. "The fundamental error exception to the waiver rule is available only where the record reveals clearly blatant violations of basic and elementary principles of due process and the harm or potential for harm cannot be denied." Book v. State, 880 N.E.2d 1240, 1248 (Ind. Ct. App. 2008), trans. denied. "To qualify as fundamental error, an error must be so prejudicial to the rights of the defendant as to make a fair trial impossible." Rowe v. State, 867 N.E.2d 262, 266 (Ind. Ct. App. 2007).

Here, the trial court's failure to define the phrase "serious bodily injury" did not constitute fundamental error. The jury was properly instructed as to the elements of robbery as a class A felony, the language of the charging information, and the burden of proof and did not request any clarification regarding these instructions. Under the

circumstances and in the context of this case, namely, that the State alleged and presented evidence that the serious bodily injury caused by Wilson was Akinade's broken arm, we cannot say that the phrase "serious bodily injury" would cause the jury any confusion. See Manley v. State, 656 N.E.2d 277, 279 (Ind. Ct. App. 1995) (finding that the term "firearm" was commonly understood and did not need to be defined for the jury), trans. denied.

Moreover, Akinade testified before the jury that, while Falana was driving and he was in the front passenger seat, he was thrown or pushed out of the vehicle while it was moving and landed on the road. Akinade testified that he had surgery on his left arm, was in the hospital for two days, and, according to the trial transcript, showed the jury the scarring and marks on his arm. Detective Sibley testified that, when he arrived at the hospital to speak with Akinade, Akinade was "physically shaking" and "appeared to be in a lot of pain." Transcript at 133. Detective Sibley testified that Akinade's "arm kept involuntarily moving" and he "couldn't really finish a sentence." Id. Moreover, the State presented medical records relevant to Akinade's treatment at the hospital. The Operative Records contained in State's Exhibit 9 indicated that Akinade suffered a "Radius Ulna Fracture Open Reduction (Left), Upper Extremity I and D (Left)." Exhibits at 56. The Operative Records include a description of the procedure, and state in part that an incision was made, that a lag screw was placed "across a portion of the oblique fracture on the more proximal segment and fixated that butterfly," that a reduction of the fracture was possible, and that a nine-hole plate was placed into position and "affixed [] proximally and distally with standard screws" and "affixed [] with multiple standard

6

locking screws." Id. at 48. The report further states that the wound was irrigated and closed using Vicryl and staples, then an incision was made "to the volar forearm," the fracture was identified, the plate was placed into position and "fixated with standard screws" and "backed up and locked with standard locking screws," and that the wound was closed with Vicryl and the skin with staples. Id. The discharge notes indicate that Akinade's "pain was initially controlled with IV narcotics and then subsequently with p.o. narcotics" and that "[o]nce he worked with occupational therapy on range of motion exercises and swelling control and his pain was well controlled with oral narcotics, [Akinade] was released to home with family." Id. at 41. The discharge instructions also provide in part that he was to follow up in approximately two weeks, to continue range of motion exercises, to not lift over two pounds with his left upper extremity, and that he was to continue icing and elevating for pain control.

Based on our review of the jury instructions as a whole and all other relevant information presented to the jury, we conclude that the trial court's failure to give a definitional instruction of "serious bodily injury" did not deprive Wilson of a fair trial so as to constitute fundamental error. See Davis v. State, 835 N.E.2d 1102, 1107-1111 (Ind. Ct. App. 2005) (holding that the trial court did not commit fundamental error in failing to give an instruction in light of all of the relevant information provided to the jury), trans. denied.

## II.

Although Wilson does not raise this claim, we address whether his convictions for robbery resulting in serious bodily injury as a class A felony and aggravated battery as a

7

class B felony violate Indiana's prohibition against double jeopardy. We raise this issue *sua sponte* because a double jeopardy violation, if shown, implicates fundamental rights. Smith v. State, 881 N.E.2d 1040, 1047 (Ind. Ct. App. 2008) (citing Scott v. State, 855 N.E.2d 1068, 1074 (Ind. Ct. App. 2006)).

The double jeopardy clause of the Indiana Constitution provides, "No person shall be put in jeopardy twice for the same offense." IND. CONST., art. 1, § 14. The Indiana Supreme Court has held that two or more offenses are the "same offense" in violation of Indiana's double jeopardy clause if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense. Mendenhall v. State, 963 N.E.2d 553, 570 (Ind. Ct. App. 2012) (citing Richardson v. State, 717 N.E.2d 32, 49 (Ind. 1999)), trans. denied. Under the actual evidence test, the evidence presented at trial is examined to determine whether each challenged offense was established by separate and distinct facts. Id. (citing Lee v. State, 892 N.E.2d 1231, 1234 (Ind. 2008)). To show that two challenged offenses constitute the "same offense" in a claim of double jeopardy, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense. Id. Application of this test requires the court to identify the essential elements of each of the challenged crimes and to evaluate the evidence from the fact-finder's perspective. Id. In determining the facts used by the fact-finder to establish the elements

8

of each offense, it is appropriate to consider the charging information, jury instructions, and arguments of counsel. Id.

Ind. Code § 35-42-5-1 provides in part that the offense of robbery is "a Class A felony if it results in serious bodily injury to any person other than a defendant," and Ind. Code § 35-42-2-1.5 provides in part that a person who knowingly or intentionally inflicts injury on a person that creates a substantial risk of death or causes serious permanent disfigurement, protracted loss or impairment of the function of a bodily member or organ, or the loss of a fetus commits aggravated battery as a class B felony.

Here, the State elevated the robbery charge to a class A felony based upon "serious bodily injury, that is: broken arm, to Anthony Akinade." Appellant's Appendix at 25. The State's aggravated battery charge was based upon "protracted loss or impairment of the function of a bodily member or organ, that is: broken arm, to Anthony Akinade, by pushing him out of a moving car." Id. at 25-26. There is a reasonable possibility that the jury used evidence of Akinade's broken arm to establish the robbery enhancement and aggravated battery. Therefore, we conclude that the two convictions violate Indiana's double jeopardy clause. See Mendenhall, 963 N.E.2d at 572 (observing there was a reasonable possibility that the jury used evidence of the victim's protracted loss or impairment of the function of his right eye to establish the robbery enhancement and aggravated battery and concluding that the two convictions violated Indiana's double jeopardy clause) (citing Smith, 881 N.E.2d at 1048 ("It is improper for the State to rely on evidence of the same injury to sustain a conviction for both class A felony robbery and class B felony aggravated battery.")); see also Burnett v. State, 736 N.E.2d 259, 262-263

9

(Ind. 2000) (finding that there was a reasonable possibility that the same evidence used by the jury to establish the essential elements of aggravated battery was also included among the evidence establishing the essential elements of robbery as a class A felony and concluding that the defendant's dual convictions for robbery as a class A felony and aggravated battery violated the Indiana double jeopardy clause), overruled on other grounds by Ludy v. State, 784 N.E.2d 459 (Ind. 2003). Accordingly, we remand to the trial court with instructions to vacate Wilson's conviction for aggravated battery as a class B felony. See Burnett, 736 N.E.2d at 263 (remanding to the trial court with instructions to vacate the defendant's aggravated battery conviction); see also Williams v. State, 892 N.E.2d 666, 669 (Ind. Ct. App. 2008) (concluding that the appropriate remedy for a double jeopardy violation was vacating the conviction and sentence with the less severe penal consequences) (citing Richardson, 717 N.E.2d at 54-55), trans. denied.[3]

## CONCLUSION

For the foregoing reasons, we affirm Wilson's conviction for robbery as class A felony and remand with instructions to vacate Wilson's conviction for aggravated battery as a class B felony.

Affirmed in part, reversed in part, and remanded with instructions.

RILEY, J., and BRADFORD, J., concur.

---

[3] Because Wilson's sentences were ordered to be served concurrently, our decision to vacate his conviction for aggravated battery as a class B felony does not affect his aggregate sentence. Also, because we vacate his conviction for aggravated battery as a class B felony, we need not address Wilson's argument that the evidence is insufficient to sustain that conviction.