**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Dec 19 2014, 8:38 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DARREN BEDWELL**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KARACHI WARREN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1405-CR-225 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Mark D. Stoner, Judge
Cause No. 49G06-1309-FA-63900

**December 19, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Karachi Warren was convicted of robbery, as a Class C felony, and criminal confinement, as a Class C felony, following a jury trial. The trial court also adjudicated Warren an habitual offender following a bench trial. In this appeal, Warren presents two issues for our review:

1.      Whether the State used the same evidence to support his conviction for robbery and his conviction for criminal confinement.

2.      Whether the trial court erred when it did not grant him credit time.

We affirm and remand with instructions.

## FACTS AND PROCEDURAL HISTORY

During the early morning hours of June 29, 2013, Warren broke into the residence of Carolyn Roney. Warren and Roney were "friend[s]," and Warren recently had helped Roney move into a new residence in Indianapolis. Tr. at 53. During the move, Warren helped move a fifty-five-inch flat screen television into Roney's residence. When Warren broke into Roney's residence on June 29, he found Roney asleep in her bed, and he began to strangle her. After Roney woke up, Warren asked her whether she would scream if he removed his hands from her throat. Roney assured Warren that she would not scream, so he stopped strangling her.

Roney sat up in her bed, and Warren asked her whether she had any money. When Roney said, "No," Warren said, "Well, then, that t.v. is going." Id. at 63. Roney objected, and Warren began strangling Roney again. Warren strangled Roney "at least four times," and the force was so great that Roney bled from her nose and urinated on herself. Id. at 64. Roney asked Warren for permission to change her clothes. Warren

2

consented, but insisted on watching her while she changed. Warren then used Roney's cell phone to make a call. Roney heard Warren tell the person who answered his call that he had access to a large-screen television, and he gave Roney's address.

Warren escorted Roney to a door at the back of the residence, and the two stood on a porch. Roney's residence was one-half of a duplex, and Roney's sister lived in the other half. At some point, Roney ran away from Warren and "banged" on a window at her sister's residence, but Warren caught up to Roney and "grabbed [her] by [her] throat again and dragged [her] back around the house and back into the house again." Id. at 68. Warren threatened to "get" Roney's mother and daughter if Roney called the police. Id. at 69.

A van pulled up outside of Roney's residence, and Warren "made [Roney] sit down [o]n the bed while he started to unhook the t.v." Id. at 70-71. Roney "[took] off out the front door" and told the driver of the van, "You know y'all stealing that t.v." Id. at 72. Then Roney made her way to her sister's front door and began knocking on it. Warren carried the television out of Roney's house, put it in the waiting van, and the two men drove off.

The State charged Warren with burglary, as a Class A felony; robbery, as a Class C felony; criminal confinement, as a Class C felony; strangulation, a Class D felony; and theft, as a Class D felony. The State also alleged that Warren was an habitual offender. A jury found Warren guilty of robbery, as a Class C felony; criminal confinement, as a Class C felony; and theft, as a Class D felony; and the jury acquitted him of the other charges. Warren waived his right to a jury trial and pleaded guilty on the habitual

3

offender allegation, and the trial court adjudicated him an habitual offender. The trial court entered judgment of conviction only on the robbery and criminal confinement verdicts and sentenced Warren as follows: eight years for robbery, as a Class C felony, enhanced by seven years for the habitual offender adjudication; and eight years for criminal confinement, as a Class C felony, to be served concurrent with the fifteen-year sentence for robbery; for an aggregate sentence of fifteen years with twelve years executed and three years on work release.

In the sentencing order, the trial court stated in relevant part as follows:

COURT DID NOT AWARD THE 207 DAYS CREDIT [for Warren's pretrial incarceration] ON THIS CASE FROM 09/30/2013-04/24/14, BECAUSE THE COURT BELIEVES THOSE DAYS SHOULD BE USED TOWARDS THE VIOLATION OF PAROLE CASE UNDER . . . 49G040803PC063333. IF DOC DOES NOT AWARD THE 207 DAYS CREDIT TOWARDS THE PAROLE VIOLATION CASE, THEN THOSE DAYS SHOULD BE APPLIED TO THIS CASE.

Appellant's App. at 18. This appeal ensued.

## DISCUSSION AND DECISION

### Issue One: Double Jeopardy

Warren first contends that the State supported each of his two convictions with the same evidence, in violation of Indiana's Double Jeopardy Clause. See Richardson v. State, 717 N.E.2d 32 (Ind. 1999). As our supreme court has explained:

In Richardson, we reviewed the history of the Indiana Constitution's Double Jeopardy Clause to ascertain and articulate a single comprehensive rule synthesizing and superseding previous formulations and exceptions. We explained that two offenses are the "same offense" in violation of the Indiana Double Jeopardy Clause if, "with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." [Richardson, 717 N.E.2d at 49].

4

In the present case the defendant claims a violation of the Indiana Double Jeopardy Clause not under the statutory elements test but under the actual evidence test. To show that two challenged offenses constitute the same offense under the actual evidence test, "a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." Id. at 53.

Application of the actual evidence test requires the reviewing court to identify the essential elements of each of the challenged crimes and to evaluate the evidence from the jury's perspective, considering where relevant the jury instructions, argument of counsel, and other factors that may have guided the jury's determination. Richardson, 717 N.E.2d at 54 n. 48; see, e.g., Burnett v. State, 736 N.E.2d 259, 262-63 (Ind. 2000). The Richardson actual evidence test was carefully and deliberately crafted to provide a general formulation for the resolution of all actual evidence test claims. The language expressing the actual evidence test explicitly requires evaluation of whether the evidentiary facts used to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense. The test is not merely whether the evidentiary facts used to establish one of the essential elements of one offense may also have been used to establish one of the essential elements of a second challenged offense. In other words, under the Richardson actual evidence test, the Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense. Application of this principle has been articulated in different ways. Compare Richardson, 717 N.E.2d at 54 ("the defendant has demonstrated a reasonable possibility that the evidentiary facts used by the jury to establish the essential elements of robbery were also used to establish the essential elements of the class A misdemeanor battery"), with Chapman v. State, 719 N.E.2d 1232, 1234 (Ind. 1999) ("the same evidence used by the jury to establish the essential elements of murder was also included among the evidence establishing the essential elements of robbery as a Class A felony").

Spivey v. State, 761 N.E.2d 831, 832-33 (Ind. 2002) (footnote omitted). "To establish that two offenses are the same offense under the actual evidence test, the possibility must be reasonable, not speculative or remote." Griffin v. State, 717 N.E.2d 73, 89 (Ind.

5

1999).   We review whether multiple convictions violate the prohibition against double jeopardy <u>de</u> <u>novo</u>.  <u>Goldsberry v. State</u>, 821 N.E.2d 447, 458 (Ind. Ct. App. 2005).

To prove robbery, as a Class C felony, the State was required to show that Warren knowingly or intentionally took property from Roney by using or threatening the use of force or by putting Roney in fear.  Ind. Code § 35-42-5-1.  And to prove criminal confinement, as a Class C felony, the State was required to show that Warren knowingly or intentionally confined Roney, without her consent, by forcibly moving her back inside her residence, which resulted in bodily injury to Roney.  I.C. § 35-42-3-3.  The State's charging information tracked the statutory language on both allegations.

In <u>Bunch v. State</u>, 937 N.E.2d 839 (Ind. Ct. App. 2010), <u>trans. denied</u>, the defendant alleged that his convictions for robbery and criminal confinement violated the actual evidence test.  We rejected that argument and held as follows:

> In <u>Hopkins v. State</u>, our Supreme Court noted "confinement is not a lesser-included offense of robbery." 759 N.E.2d 633, 639 (Ind. 2001). "Furthermore, where the confinement of a victim is greater than that which is inherently necessary to rob them, the confinement, while part of the robbery, is also a separate criminal transgression." <u>Id.</u> Here, Bunch's confinement of K.V. extended well beyond what was necessary to rob her; Bunch forced her to the floor at gunpoint, remained in the home for more than two hours, and, while leaving the residence, threatened K.V. to remain on the floor for an additional fifteen minutes after Bunch left. Bunch's conviction for both the robbery and criminal confinement of K.V. did not violate the prohibition against double jeopardy.

937 N.E.2d at 848 n.8.

Likewise, here, Warren's confinement of Roney extended well beyond what was necessary to rob her.  Before Warren unhooked the television to remove it from the house, Warren had forcibly moved Roney from inside the house to a porch outside.

6

Warren then forcibly moved Roney back inside the house. Once they were back inside, Warren began unhooking the television and removed it from the house. Warren strangled Roney "at least four times" and threatened to harm Roney's mother and daughter if she reported him to the police. Tr. at 64. We hold that the robbery and criminal confinement convictions are not the same offense under the actual evidence test.

## Issue Two: Credit Time

Warren next contends that the trial court erred when it did not apply his 207 days of credit time for his pretrial incarceration against his sentence in this case. In essence, the trial court ordered that the 207 days of credit time should be applied against a sentence not yet imposed for Warren's violation of his parole in another case. But, as Warren correctly contends, the 207 days of credit time should have been applied to the sentence in this case.

In support of the trial court's handling of Warren's credit time, the State directs us to Indiana Code Section 35-50-1-2(d), which provides in relevant part that if, after being arrested for one crime, a person commits another crime before the date the person is discharged from probation, parole, or a term of imprisonment imposed for the first crime, the terms of imprisonment for the crimes shall be served consecutively, regardless of the order in which the crimes are tried and sentences are imposed. Citing to State v. Lotaki, 4 N.E.3d 656, 657 (Ind. 2014), the State asserts that "[a]ny [credit] time [Warren] accrued in the present case . . . had to be applied to the aggregate sentence by attribution to Defendant's 2008 sentence." Appellee's Br. at 6.

7

But Lotaki is inapposite here. In Lotaki, the defendant was incarcerated for a 2005 offense when, in 2010, he was convicted of battery for striking a prison employee. Under Indiana Code Section 35-50-1-2(d), the trial court properly ordered that the defendant's sentence for the 2010 battery would run consecutive to his sentence for the 2005 offense. But, on appeal, our supreme court held that the trial court erroneously gave the defendant 471 days of credit time toward each sentence, for a total of 942 days. As our supreme court observed,

> when consecutive sentences are involved, credit time is deducted from the aggregate total of the consecutive sentences, not from an individual sentence. Here, the time Lotaki spent incarcerated awaiting trial on the [2010] battery charge was time he was serving the 2005 sentence, and he received credit for that time against the 2005 sentence. To award credit for this time against the battery sentence rather than against the aggregate of the consecutive sentences would result in more credit to which he was entitled and would effectively enable him to serve part of the consecutive sentences concurrently.

Lotaki, 4 N.E.3d at 657.

Here, at the time the trial court imposed sentence for the instant offense, Warren had not yet been sentenced for his parole violation. Thus, while the sentence for the parole violation, once imposed, will run consecutive to the sentence for the instant offense, there was no "aggregate of the consecutive sentences" against which to apply the credit time. See id.

Indiana Code Section 35-38-3-2 provides in relevant part as follows:

(a) When a convicted person is sentenced to imprisonment, the court shall, without delay, certify . . . copies of the judgment of conviction and sentence to the receiving authority.

(b) The judgment must include:

8

* * *

> (4) the amount of credit, including credit time earned, for time spent in confinement before sentencing[.]

In <u>Tate v. State</u>, 813 N.E.2d 437, 439 (Ind. Ct. App. 2004), we observed that this statute provides a "clear mandate" that the trial court "must provide a copy of the judgment of conviction and sentence to the receiving authority and that it must include the amount of credit time earned for time spent in confinement before sentencing[.]" And we held that, given that mandate, "in addition to case law which has consistently held that the pretrial credit must arise from pretrial confinement for the criminal charge for which the defendant is sentenced," the trial court erred when it "saved" the defendant's pretrial detention credit to be used towards the sentence on a pending charge in another cause. <u>Id.</u>

Accordingly, here, we remand and instruct the trial court to apply the 207 days of credit time to Warren's sentence in the instant case.

Affirmed and remanded with instructions.

MATHIAS, J., and BRADFORD, J., concur.