## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 13 2018, 8:52 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Jonathan O. Chenoweth
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Matthew Dante Bennett, | April 13, 2018 |
| *Appellant-Petitioner,* | Court of Appeals Case No. 18A02-1711-PC-2589 |
| v. | Appeal from the Delaware Circuit Court. |
| | The Honorable John M. Feick, Judge. |
| State of Indiana, | Trial Court Cause No. 18C04-1405-PC-1 |
| *Appellee-Respondent.* | |

**Sharpnack, Senior Judge**

## Statement of the Case

Matthew Dante Bennett appeals the post-conviction court's denial of his petition for post-conviction relief. We affirm.

# Issues

Bennett raises two issues, which we restate as:

I. Did the post-conviction court err in rejecting his claim of ineffective assistance of trial counsel.

II. Did the post-conviction court err in rejecting his claim of ineffective assistance of appellate counsel.

# Facts and Procedural History

The facts, as taken from the decision in Bennett's direct appeal, are as follows:

> On August 4, 2011, Doroteo Chavez and Abel Trejo stopped at a gas station in Muncie where they encountered a woman named Spring Miller. They arranged to meet Spring later that night so that Spring could dance for them. Spring subsequently met up with her husband Robert Miller and Bennett. Robert and Bennett informed Spring that they planned to accompany Spring to her meeting with Chavez and Trejo so that they could rob them. Spring did not wish to participate in the robbery, but because Bennett was armed with a handgun and threatened to hurt her children, she agreed to assist the two men.
>
> Spring texted Chavez and Trejo and asked them to come pick her up at an apartment. When they arrived, Spring went outside to meet them while Robert and Bennett went to the alley behind the apartment building. Spring got in a vehicle with Chavez and Trejo and directed them to drive a very short distance to an address on Celia Avenue where there was a house set back from the road. After arriving at the house, Spring led the men out of the vehicle and to the porch of the house. It was so dark outside that Spring used the light on her cell phone to help see where they were going. As they were walking up the steps onto the porch, Spring heard sticks breaking "like somebody walking . . . coming real fast." Tr. at 350. Spring then heard a "big woosh" and a "big crunch" as Robert struck Trejo in the head with a baseball bat. *Id.* at 350-51. Trejo immediately fell to the ground

twitching and gasping for air. Spring then saw Bennett wrestling with Chavez on the ground. Spring heard Bennett order Chavez to stay on the ground. Robert and Bennett began searching Trejo's and Chavez's pockets. Trejo testified at trial that the two men took his wallet containing more than $400, along with identification cards and driver's licenses.

Spring ran from the scene. A few minutes later, as she was walking on Jackson Street, Robert pulled up next to her driving the vehicle that Chavez and Trejo had been driving earlier. Bennett was in the passenger seat. The men ordered Spring to get into the vehicle. Spring complied because Bennett was still armed with the handgun. Meanwhile, Chavez and Trejo managed to get to a nearby fast food restaurant and contacted police to report the robbery. Officer Ron Miller of the Muncie Police Department responded to the scene. When he arrived, he observed that both Chavez and Trejo appeared to have suffered head injuries and their faces were bloody. Trejo was lapsing in and out of consciousness and, due to his injuries, was unable to communicate with Officer Miller. Officer Miller summoned an ambulance, and the two victims were taken to Ball Memorial Hospital.

The State charged Bennett with five counts: count I, class B felony aggravated battery [of Trejo]; count II, class C felony battery [of Chavez] by means of a deadly weapon; count III, class B felony armed robbery [of Trejo]; count IV, class B felony armed robbery [of Chavez]; and count V, class D felony auto theft. . . . The jury found Bennett guilty of class B felony aggravated battery [of Trejo], class B felony armed robbery [of Trejo], and class D felony auto theft.

*Bennett v. State*, Cause No. 18A02-1306-CR-515, *2-4 (Ind. Ct. App. Jan. 21, 2014), *trans. denied*.

[4] Bennett appealed, and he continued to be represented by his trial counsel. Bennett argued: (1) the trial court violated his right to a speedy trial; (2) the

evidence was insufficient to sustain his conviction of aggravated battery; (3) his convictions for aggravated battery and armed robbery violated Indiana's constitutional prohibition of double jeopardy; and (4) the trial court abused its discretion in the course of instructing the jury. A panel of this Court affirmed the trial court's judgment.

[5] This case began when Bennett filed a petition for post-conviction relief. The post-conviction court held an evidentiary hearing and issued findings of fact, conclusions of law, and judgment in favor of the State. This appeal followed.

## Discussion and Decision

[6] The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. *Campbell v. State*, 19 N.E.3d 271, 273-74 (Ind. 2014). When appealing the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Id.* at 274. To prevail on appeal from the denial of post-conviction relief, a petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Hollowell v. State*, 19 N.E.3d 263, 269 (Ind. 2014).

[7] The post-conviction court made findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6). We do not defer to a post-conviction court's legal conclusions, but "'[a] post-conviction court's findings and judgment will be reversed only upon a showing of clear error-that which leaves us with a definite and firm conviction that a mistake has been made.'"

*Passwater v. State*, 989 N.E.2d 766, 770 (Ind. 2013) (quoting *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (quotation omitted)).

[8] Bennett argues the post-conviction court erred by rejecting his claims of ineffective assistance of trial and appellate counsel. The Indiana Supreme Court has stated:

> To establish a post-conviction claim alleging violation of the Sixth Amendment right to effective assistance of counsel, a defendant must establish the two components set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). First, a defendant must show that counsel's performance was deficient. This requires a showing that counsel's representation fell below an objective standard of reasonableness and that counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed to the defendant by the Sixth Amendment. Second, a defendant must show that the deficient performance prejudiced the defense. This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial, meaning a trial whose result is reliable. To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is one that is sufficient to undermine confidence in the outcome.

*Passwater*, 989 N.E.2d at 770 (citations and quotations omitted).

[9] The standard of review for claims of ineffective assistance of appellate counsel is the same as for trial counsel in that the defendant must show appellate counsel was deficient in his or her performance and that the deficiency resulted in prejudice. *Hollowell*, 19 N.E.3d at 269. "If it is easier to dispose of an

ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069.

# 1. Trial Counsel

[10] Bennett argues his trial counsel rendered ineffective assistance by failing to object at the sentencing hearing. Specifically, he claims counsel should have argued to the sentencing court that his convictions of robbery and aggravated battery violated his statutory and common law protections against double jeopardy. Bennett concedes that a claim that his trial counsel should have raised a double jeopardy claim under the Indiana Constitution would be barred by res judicata. Reply Br. p. 5. The State argues that Bennett's other double jeopardy claims are also barred by res judicata. We disagree and consider the merits of Bennett's statutory and common law claims.[1]

[11] When a petitioner contends that counsel was ineffective for failing to object, to show prejudice petitioner must prove that the court would have sustained the objection. *Passwater*, 989 N.E.2d at 770. Absent such a showing, the petitioner cannot establish the prejudice component of the *Strickland* test. *Id.*

[12] The Indiana General Assembly has enacted a statute pertaining to double jeopardy, which provides:

> Whenever:

---

[1] Bennett is not raising a claim under the Double Jeopardy Clause of the United States Constitution.

> (1) a defendant is charged with an offense and an included offense in separate counts; and
>
> (2) the defendant is found guilty of both counts;
>
> judgment and sentence may not be entered against the defendant for the included offense.

Ind. Code § 35-38-1-6 (1983).

[13] An "included offense" is defined, in relevant part, as an offense that is established by proof of the same material elements or less than all the material elements required to establish the commission of the offense charged. Ind. Code § 35-31.5-2-168 (2012). If each offense is established by proof of an element not contained in the other, then Indiana Code section 35-38-1-6 does not preclude conviction and sentence for both offenses. *Ingram v. State*, 718 N.E.2d 379, 381 (Ind. 1999).

[14] A defendant commits aggravated battery when he or she (1) knowingly or intentionally (2) inflicts injury on a person (3) that creates a substantial risk of death. Ind. Code § 35-42-2-1.5 (2014). Count one, the charge of aggravated battery of Trejo, tracks the statutory language. A defendant commits armed robbery when he or she (1) knowingly or intentionally (2) takes property from another person or from the presence of another person (3) by using or threatening the use of force or by putting any person in fear (4) while armed with a deadly weapon or causing bodily injury to another person. Ind. Code § 35-42-5-1 (2014). Count three, the charge of armed robbery of Trejo, tracks the statutory language and specifies that Bennett committed the offense while armed with a deadly weapon.

[15] Bennett argues that his convictions for aggravated battery of Trejo and armed robbery of Trejo as charged violate Indiana Code section 35-38-1-6 because he claims the same force, Robert hitting Trejo in the head with a baseball bat, was used to accomplish both crimes. We disagree. Bennett did not touch or speak with Trejo during the attack, and we must conclude he was liable for the crimes against Trejo as Robert's accomplice.[2] Robert struck Trejo with the bat, committing aggravated battery. Bennett, who had a handgun, assisted Robert by wrestling with Trejo's companion, Chavez, and ordering him to stay down while Robert took Trejo's wallet, committing armed robbery. We agree with the post-conviction court that Bennett's separate use of force against Chavez while assisting Robert established separate factual bases for the offenses, and there is no violation of the included offense statute. *See Smith v. State*, 881 N.E.2d 1040, 1047 (Ind. Ct. App. 2008) (convictions of robbery and confinement did not violate Indiana Code section 35-38-1-6; State provided evidence of force used to commit confinement that was separate from force used to commit robbery).

[16] Next, Bennett argues his convictions for aggravated battery and armed robbery violate Indiana's common-law rules against double jeopardy. Indiana courts have "long adhered to a series of rules of statutory construction and common law that are often described as double jeopardy, but are not governed" by the

---

[2] The trial court instructed the jury on aiding, inducing, or causing an offense. Trial Tr. Vol. 2, p. 484.

Indiana Double Jeopardy Clause. *Pierce v. State*, 761 N.E.2d 826, 830 (Ind. 2002). Among other principles, Indiana courts prohibit "conviction and punishment for a crime which consists of the very same act as an element of another crime for which the defendant has been convicted and punished." *Richardson v. State*, 717 N.E.2d 32, 55 (Ind. 1999) (Sullivan, J., concurring). This common law rule is not violated where "the subject behavior or harm is either separate from or more extensive than that necessary to constitute the element of the first crime." *Id.*

[17] Robert's act of hitting Trejo in the head with the baseball bat established the force necessary to commit aggravated battery and convict Bennett as an accomplice. Bennett assisted Robert in robbing Trejo by wrestling Chavez to the ground and ordering him to stay there while armed with a handgun, thus establishing separate factual elements for armed robbery. Bennett argues the jury likely considered the same act of violence (hitting Trejo with the bat) as the force used in both offenses because the jury did not convict him of battering or robbing Chavez. He reasons the jury must have disregarded any force he used against Chavez. Speculating as to the jury's reasoning is difficult, but we note Trejo testified at Bennett's trial while Chavez did not. The jury's not guilty verdicts as to offenses against Chavez could have reasonably been based on Chavez's failure to appear as much as any doubt that Bennett committed the acts against Chavez that Spring described at trial. Bennett's common law double jeopardy claim must fail.

[18] We have determined Bennett cannot prevail on his statutory and common law claims. As a result, Bennett was not prejudiced by his trial counsel's failure to object, because counsel is not required to raise an objection that would have failed. If trial counsel had objected to Bennett's sentence on those grounds, the outcome would not have been different, and the post-conviction court did not err in rejecting Bennett's claims of ineffective assistance of trial counsel.

## 2. Appellate Counsel

[19] Bennett argues his appellate counsel rendered ineffective assistance by: (1) failing to raise double jeopardy claims under Indiana's included offense statute and common law; and (2) failing to effectively present a claim of double jeopardy under the Indiana Constitution. We have determined that Bennett's claims under the Indiana included offense statute and Indiana common law must fail. Appellate counsel will not be deemed ineffective for "failing to present meritless claims." *Vaughn v. State*, 559 N.E.2d 610, 615 (Ind. 1990). That leaves Bennett's claim under the Indiana Double Jeopardy clause.

[20] The State argues Bennett's Indiana double jeopardy claim is barred by res judicata, claiming the Indiana constitutional double jeopardy issue was resolved on direct appeal and should not be addressed again. We disagree. In *Harris v. State*, our Supreme Court stated that when a petitioner raises a claim of ineffective assistance of appellate counsel for inadequately presenting an issue, the underlying issue must be "re-adjudicated" and is not barred by res judicata.

861 N.E.2d 1182, 1186 (Ind. 2007). "In short, the Sixth Amendment right to counsel trumps the state law res judicata doctrine." *Id.*

A claim of ineffective assistance of appellate counsel falls into one of three categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well. *Carter v. State*, 929 N.E.2d 1276, 1278 (Ind. 2010). Claims of inadequate presentation of issues are the most difficult for petitioners to advance and for reviewing tribunals to support. *Bieghler v. State*, 690 N.E.2d 188, 195 (Ind. 1997). This is so because "these claims essentially require the reviewing tribunal to re-view specific issues it has already adjudicated to determine whether the new record citations, case references, or arguments would have had any marginal effect on their previous decision," thus implicating "concerns of finality, judicial economy, and repose while least affecting assurance of a valid conviction." *Id.* Further, a "less than top notch performance" by appellate counsel does not necessarily prevent Indiana's appellate courts from "appreciating the full measure of an appellant's claim" because we commonly perform separate legal research on cases. *Id.* An ineffectiveness challenge resting on counsel's inadequate presentation of a claim must overcome "the strongest presumption of adequate assistance." *Id.* at 196.

Article I, section 14 of the Indiana Constitution provides, "No person shall be put in jeopardy twice for the same offense." It is well established that two convictions violate the Indiana Double Jeopardy Clause when, "with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the

essential elements of another challenged offense." *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999) (emphasis in original).

[23] On direct appeal, Bennett's counsel argued that Bennett's convictions for armed robbery and aggravated battery violated the "actual evidence" component of the *Richardson* standard, claiming Robert's single act of hitting Trejo with the bat established essential elements of both offenses. Bennett's counsel raised *Smith*, 881 N.E.2d 1040. In *Smith*, this Court sua sponte reversed Smith's conviction for Class B felony robbery, concluding that the robbery conviction and Smith's conviction for Class B felony aggravated battery violated Indiana's Double Jeopardy Clause. The Court concluded the "actual evidence" test was violated because both offenses required proof of bodily injury, and the only injury the State demonstrated was that Smith struck a correctional officer twice, knocking teeth loose. *Id.* at 1048.

[24] In Bennett's direct appeal, the Court disregarded his discussion of the *Smith* case and ruled against him on his Indiana Double Jeopardy Clause claim. Bennett now argues his appellate counsel rendered ineffective assistance by discussing *Smith* rather than other cases that he claims more closely match the facts of his case. He claims *Smith* is factually distinguishable because that case addressed whether the same injury supported both offenses, whereas in this case the issue is whether the same act of violence supported both offenses.

[25] We conclude Bennett's claim is a distinction without a difference. On direct appeal, Bennett's counsel clearly raised a claim that the same act of violence

supported both offenses, and his citation to *Smith* provided a sufficient illustration of the "actual evidence" test for the Court to have found in Bennett's favor if the facts had merited that result. The Court instead determined there were separate acts that supported each conviction, specifically Robert striking Trejo with a bat (battery) and Bennett wrestling with Chavez and ordering him to stay down while armed with a handgun, allowing Robert to take Trejo's wallet (robbery).

[26] Further, the cases Bennett claims his direct appeal counsel should have raised are factually distinct from his case. In *Burnett v. State*, 736 N.E.2d 259, 262-63 (Ind. 2000), *overruled in part on other grounds by Ludy v. State*, 784 N.E.2d 459, 462 (Ind. 2003), the Indiana Supreme Court determined convictions for Class A felony and Class B felony aggravated battery violated the Indiana Double Jeopardy Clause because there was a reasonable possibility the same act (the stabbing of the victim in the neck) supported elements of both offenses. Indeed, the State failed to present evidence of any other violent acts by defendant. In *Richardson*, 717 N.E.2d at 54, the Indiana Supreme Court determined convictions for Class C felony robbery and Class A misdemeanor battery violated the Indiana Double Jeopardy Clause because there was a reasonable possibility the same act (the beating of the victim while taking his money) supported elements of both offenses. Finally, in *Troutner v. State*, 951 N.E.2d 603, 611 (Ind. Ct. App. 2011), *trans. denied*, the Court determined Troutner's convictions for Class B felony robbery and Class A misdemeanor battery violated the Indiana Double Jeopardy Clause because there was a reasonable

possibility the same act (the beating of the victim while taking his money) supported elements of both offenses. In contrast to those three cases, in Bennett's case the State presented evidence of two acts of violence that separately supported the offenses. We cannot conclude that citing to different cases would have led to a different result in Bennett's direct appeal. In the absence of prejudice, Bennett's claim of ineffective assistance of appellate counsel must fail, and the post-conviction court did not err in rejecting it.

# Conclusion

For the reasons stated above, we affirm the judgment of the trial court.

Judgment affirmed.

Vaidik, C.J., and May, J., concur.